In re ESTATE OF Robert C. HANAU, Deceased, Appellant.

No. 13–90–00295–CV.

Court of Appeals of Texas, Corpus Christi.

March 14, 1991.

Rehearing Overruled April 11, 1991.

Michael J. Cenatiempo, Sharon Brand Gardner, Helen B. Wils, Cenatiempo & Gardner, Houston, Jaime Saenz, Eduardo Rodriguez, Rodriguez, Colvin & Chaney, Brownsville, for appellant.

Randell W. Friebele, Friebele & Mardis, Harlingen, for appellee.

Before NYE, C.J., and BENAVIDES and HINOJOSA, JJ.

## OPINION

BENAVIDES, Justice.

Steven Hanau complains of the trial court's order denying his application to remove Dorris Hanau as executrix of Robert C. Hanau's estate and to appoint him as successor executor. By two points of error, Steven raises challenges related to the trial court's finding that the administration of the estate was closed. We affirm the trial court's judgment.

On May 10, 1982, Robert C. Hanau's will was admitted to probate and his widow, Dorris Dunn Hanau was appointed sole in-

dependent executrix. On May 2, 1983, Steven L. Hanau, the decedent's son, filed a complaint in which he specified acts which he contended were a violation of Dorris' fiduciary duty and he raised the issue of the characterization of certain property. He also requested that Dorris be removed as independent executrix and that he be instated in her stead. Dorris answered, specifically denying Steven's complaints and requesting declaratory relief with regards to characterizing certain property as community property. She further sought a temporary injunction preventing Steven and his sister, Leslie Dublinske, from disposing of what she considered to be community property. On July 22, 1985, Steven amended his petition to set forth a suit for declaratory relief, complaining, among other things of Dorris' refusal to render an accounting of the estate. Steven requested that the court order Dorris to make an accounting pursuant to section 149A of the Probate Code. Again, Steven requested that Dorris be removed as independent executrix and that he be instated as independent executor. According to the record, Dorris attached her accounting to her answers to Steven's interrogatories.

The trial court severed the characterization issue from the accounting and removal issue. Eventually, the Supreme Court addressed characterization and issued a mandate in that regard on July 22, 1987. *See Estate of Hanau v. Hanau*, 730 S.W.2d 663 (Tex.1987). Subsequently, Dorris failed to comply with the Supreme Court mandate that she deliver the separate property to Steven and Leslie and, on October 25, 1988, Steven and Leslie filed a motion to show cause why Dorris should not turn over all of the decedent's separate estate to movants. In February, 1989, the trial court entered an interlocutory order on the motion, ordering Dorris to deliver the separate property to Steven and Leslie by March 8, 1989 and to report to the court on the distribution of the property with an updated accounting.

On February 27, 1990, Steven filed his first amended original petition, complaining again of Dorris' refusal to distribute the entirety of the bequests to Steven and Leslie and Dorris' misapplication and embezzlement of the estate funds and assets; Steven requested Dorris' removal. He also filed an application to be appointed successor independent executor.

On June 18, 1990, the day set for trial on Steven's petition, Dorris filed her final account of Robert's estate. When the case was called for trial, the court found that Dorris' filing of the final account terminated the independent administration of the estate and the power and authority of the independent executor. The court further found that there were no matters to be heard by the court at the time in view of the closing of the estate. The court then denied Steven's application to have Dorris removed as independent executrix and to have himself appointed as successor independent executor.

By his first point of error, Steven contends that the trial court erred by denying him his right to trial on the issues of Dorris' removal or abandonment of her office of independent executrix, in derogation of his due process rights and his rights under the Probate Code, because of the trial court's finding that the final account Dorris filed on June 18, 1990, effected a complete closure and termination of the administration of Robert's estate. By his second point of error, Steven contends that the trial court erred in refusing to allow Steven to prove, by means of the final account itself and other evidence, a necessity for the continued administration of the estate and his qualifications as successor independent executor of the estate, and in refusing to appoint Steven as independent executor of his father's estate pursuant to the terms of his father's will.

■ The office of independent executor is inherently an administrative office and is an office that eliminates to a considerable degree judicial supervision of an estate. *Hunt v. Knolle*, 551 S.W.2d 764, 767 (Tex. Civ.App.—Tyler 1977, no writ). The gener-

al purpose of independent administration of estates is to free the independent executor from the often onerous and expensive judicial supervision and thereby to effect the distribution of the estate with a minimum of cost and delay. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 n. 1 (Tex. 1983); *Corpus Christi Bank & Trust v. Alice Nat'l Bank*, 444 S.W.2d 632, 634 (Tex.1969).

Independent administration of estates is governed by the Texas Probate Code §§ 145–154A (Vernon 1980 and Vernon Supp.1991). Section 151 governs one of several optional methods by which an independent administration may be closed, and it states:

> (a) ... When all of the debts known to exist against the estate have been paid, or when they have been paid so far as the assets in the hands of the independent executor will permit, and when the independent executor has distributed to the persons entitled thereto all assets of the estate, if any, remaining after payment of debts, the independent executor may file with the court a final account verified by affidavit.

TEX.PROB.CODE ANN. § 151(a) (Vernon 1980). In this case, the Supreme Court issued a mandate regarding which property was to go to which heirs, and the trial court issued a subsequent order reiterating this mandate. Appellants have received property of the estate from Dorris pursuant to their requests to the trial court based upon the Supreme Court's findings.

Subsection (a) of § 151 sets forth the requirements for the contents of the affidavit. The final account must list the property of the estate which came into the hands of the independent executor, the debts paid and those, if any, still owed by the estate, the property, if any, remaining on hand after the payment of the debts, and the names and residences of the persons to whom the remaining property has been distributed. TEX.PROB.CODE ANN. § 151(a)(1)–(5). Furthermore, this section outlines the effect of the filing of the affidavit and states:

> (b) ... The filing of such an affidavit shall terminate the independent administration and the power and authority of the independent executor, but shall not relieve the independent executor from liability for any mismanagement of the estate or from liability for any false statements contained in the affidavit.

TEX.PROB.CODE ANN. § 151(b) (Vernon 1980). This subsection also states that after the affidavit is filed, those persons having dealings with the estate or claims against the estate shall deal directly with the distributees of the estate. *Id.*

■ An independent administration of an estate is considered closed when the debts have been paid and the property has been distributed and there is no more need for administration. *Interfirst Bank–Houston v. Quintana Petroleum Corp.*, 699 S.W.2d 864, 874 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). The filing of a verified final account with the probate court pursuant to section 151 merely formally closes an independent administration. *See Lowrance v. Whitfield*, 752 S.W.2d 129, 134 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *accord Dallas Services for Visually Impaired Children v. Broadmoor II*, 635 S.W.2d 572, 578 (Tex. App.—Dallas 1982, writ ref'd n.r.e.).

■ The filing of an unverified informal inventory and appraisal of the estate, along with a list of the claims of and against the estate will not close an estate. *Lowrance*, 752 S.W.2d at 134. We must look beyond the title of the final accounting to its contents to determine if the document is in fact a section 151 affidavit; if the instrument before the court is filed as the final accounting but is in reality only a presentation of the status of the estate and if it is apparent from the instrument that the estate is not ready to be closed, then, to close the estate would ignore the purpose of the statute. *See Matter of Estate of Minnick*, 653 S.W.2d 503, 509 (Tex.App.—Amarillo 1983, no writ). Steven complains that the court did not allow him to put on

evidence which would show that the FINAL ACCOUNT was incorrect and that the estate was in need of further administration. Contrary to Steven's position, the document can be examined on its face only. The court does not have the power to look at the substance of the accounting in an effort to determine whether it is accurate or whether the executor has properly administered the estate. *Burke v. Satterfield*, 525 S.W.2d 950, 953 (Tex.1975). The court can neither approve nor disapprove a final accounting, it can only review whether the document filed meets the requirements of § 151(a). *See Id.*

 In this case, the document that Dorris filed was titled "FINAL ACCOUNT." As required by § 151(a), it listed the property of the estate which came into Dorris' hands, the debts of the estate which had been paid, the debts still owing by the estate, the property remaining after payment of the debts, and the names and residences of the persons to whom the property of the estate remaining on hand after payment of the debts had been distributed. Furthermore, as required, Dorris verified the FINAL ACCOUNT. In its judgment, the trial court stated that it found that the filing of this FINAL ACCOUNT terminated the independent administration and the power and authority of the independent executor, who in this case was Dorris. We agree. The face of the FINAL ACCOUNT meets the requirements of § 151. Whether the substance of the FINAL ACCOUNT was true was not before the trial court. *See Burke*, 525 S.W.2d at 953. The trial court was correct in determining that the filing of the FINAL ACCOUNT terminated Dorris' independent administration and her power and authority as independent executrix of Robert's estate.

 Steven also contends that the trial court's action deprived him of his due process rights under the Texas Constitution Art. I, Sections 13 and 19. Art. I, § 13 provides that all courts shall be open and every person shall have remedy by due course of law for injury done to him. TEX. CONST. ART. I, § 13. Art. I, § 19 provides the following protection: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of law of the land." TEX. CONST. ART. I, § 19. Steven still has open access to the courts for remedy by way of a suit against Dorris for false statements contained in the affidavit and for mismanagement of the estate. *See* TEX.PROB.CODE ANN. § 151(b).

 The trial court has power to hear all matters incident to an estate only in those instances where a probate proceeding, such as the administration of an estate, is actually pending in the court in which the suit is filed, relating to a matter incident to that estate. *Interfirst Bank–Houston*, 699 S.W.2d at 873. Hence, once the estate was closed, the court lost jurisdiction to remove Dorris as independent executrix and appoint Steven independent executor in her stead. Furthermore, once the estate was closed, the removal of the independent executrix and appointment of a successor executor became moot. Steven's points of error one and two are overruled.

We affirm the trial court's judgment.

HINOJOSA, J., not participating.