**In the Matter of the ESTATE OF Rex L. McGARR, Deceased.**

No. 13–98–523–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 16, 1999.

Opinion Overruling Rehearing Jan. 27, 2000.

Rehearing Overruled March 16, 2000.

Guillermo, Vega, Jr., Brownsville, Heriberto (Eddie) Medrano, Harlingen, for appellant.

John Williamson, Brownsville, Steve McConnico, Scott, Douglass, Luton & McConnico, Jane M. N. Webre, Scott Douglass McConnico, Austin, for appellee.

Before Chief Justice SEERDEN, Justices DORSEY, and CHAVEZ.

## OPINION

Opinion by Justice CHAVEZ.

This case arises from the estate of Rex L. McGarr, who died testate on January 20, 1986. Appellants[1] sought an inventory, accounting, and distribution of McGarr's estate. Appellee Ruben Peña answered by asserting that the appellants lacked standing because of releases they had signed, and also that limitations and laches blocked their action. The trial court denied appellants' requests, and they appealed. We affirm.

---

1. This lawsuit was originally commenced by appellants Esperanza Suarez, Roberto Candelas, Rogerio Pedraza, and Roberto Pedraza, who sought only an inventory and accounting. Ruby Duthu, Rex Duthu, Paul Duthu, Lee Roy Duthu, and Herman Duthu ("the Duthu heirs") filed a plea in intervention, seeking an inventory, accounting, and also requesting a distribution of the estate.

## Facts

McGarr was a farmer who owned land in excess of 300 acres, plus farm equipment and other items of personal property. Although estimates of the value of McGarr's land vary, the value of his complete possessions approached at least $1 million. In 1984 Robert Pedraza, McGarr's farm foreman, was named as McGarr's guardian. When McGarr died, Pedraza and Peña were named co-independent executors of McGarr's estate. The will provided that appellants Esperanza Suarez, Roberto Candelas, Rogerio Pedraza (Robert's father), and Robert Pedraza would each receive a general bequest of $5000. Robert Pedraza was also to receive a specific bequest of 114.13 acres. General bequests of $5000 were also provided for McGarr's brother Jimmy McGarr (who is not a party to this lawsuit) his sister, Ruby Duthu, and his nephew Rex Duthu. The will further provided that the remainder of McGarr's estate be held in trust for the benefit of Ruby Duthu, with the trust to terminate and the trust property to be distributed after twenty years to McGarr's nephews, Paul Duthu, Lee Roy Duthu, Herman Duthu, and Rex Duthu.

Before and after McGarr's death, loans totaling several hundred thousand dollars were taken by McGarr's guardian and the executors of his estate. The propriety of these loans, and whether McGarr's estate was liable for the loans, are matters disputed by the parties.

In June 1986 two important transactions were executed. In the first, various debts of the estate were consolidated in a new loan from Town & Country Bank for approximately $625,000, secured by all remaining property of the estate. In the other, the estate sold approximately 62 acres of land to El Rancho Potrero Development Company, Inc., which was incorporated by Ruben Peña and predominately owned by Robert Pedraza, for $219,000. El Potrero borrowed the money from Town & Country Bank for this purchase, and the bank took a security interest in the real estate being sold. After various fees were satisfied, the balance of the sale was credited to past-due loans owed by the estate to Town & Country Bank. Appellants contend that $219,000 was not a fair price for this land, and that this transaction represents self-dealing by the executors of McGarr's estate.

In late 1987 Peña informed the Duthu heirs that the estate was heavily mortgaged, but that Town & Country Bank was willing to permit them to receive sums ranging from $5500 to $7000 if they would release any and all claims against the estate. According to the testimony of Paul, Herman, and Rex Duthu, Peña told them that if they did not accept the settlement offer they would be personally responsible for the debts of the estate. A letter from Peña to Paul Duthu contained the cryptic and potentially misleading statement "we are hoping to be able to settle the estate without having to make any payments other than what is owed." The Duthu heirs agreed to the settlements and signed forms releasing all claims pertaining to the estate.

In 1988 Harlingen National Bank, successor in interest to the two June 1986 loans, filed suit in the 138th District Court of Cameron County to foreclose on those loans. A settlement was reached whereby the bank took all the remaining property once held by the estate. This settlement was memorialized in a final judgment dated July 21, 1989. Peña contends that, by distributing the remainder of the estate property, this judgment terminated the administration of McGarr's estate.

In 1990 several of the Duthu heirs consulted attorney Don Barrett in their home state of Mississippi. Barrett wrote to Peña inquiring about the releases and the status of the estate. Peña wrote to Barrett explaining that the estate had been heavily-indebted, and Barrett obtained

copies of various documents[2] from the Cameron County Clerk's Office. Barrett then relayed to the Duthus that "Mr. McGarr simply owed more money at the time of his death than he had in property," and "the bottom line is ... you would not be able to obtain any more money out of this estate."

In 1996 the Duthus consulted an attorney in Cameron County and began various legal action against Peña. The record does not reflect when the remaining appellants acquired actual knowledge of facts that led them to file this action, or even when they filed their action.[3] The Duthus' plea in intervention was filed November 6, 1997.

### Right to Accounting and Distribution

At any time after the expiration of fifteen months from the date an independent administration was created and the order appointing an independent executor was entered by the county court, any person interested in the estate may demand an accounting from the independent executor. TEX. PROB.CODE ANN. § 149A(a) (Vernon 1980). In addition to or in lieu of the right to an accounting provided by Section 149A, a person interested in the estate may petition the court for an accounting and distribution at any time after the expiration of twelve months after all the estate and inheritance taxes are paid, or three years from the date an independent administration was created and the order appointing an independent executor was entered, whichever date is later. TEX. PROB.CODE ANN. § 149B(a) (Vernon Supp.1999).

### Limitations, Constructive Notice, and the Discovery Rule

■ Appellee contends that appellants' action is barred by limitations. It is unclear what the limitations period is for the demands asserted by the appellants. The Texas Supreme Court has suggested that the proper limitations period is four years. *Little v. Smith,* 943 S.W.2d 414, 416 (Tex. 1997) (summary judgment asserting four year limitations period to claims including demands for accounting and distribution of estate upheld). No limitations statute in Texas permits any civil damages claim to be brought more than five years after the claim accrues. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.001–16.0045, 16.051 (Vernon 1986).

■ The starting point for any limitations analysis is to fix the date on which the cause of action accrued. An interested party may demand an accounting from the independent executor after fifteen months from the date an independent administration was created and the order appointing an independent executor was entered. TEX. PROB.CODE ANN. § 149A(a) (Vernon 1980). However, when an estate closes, limitations statutes begin to run against the assertion of this right. *See Little,* 943 S.W.2d at 416, 423. An independent executor may close an independent administration by filing a final account verified by affidavit. TEX. PROB.CODE ANN. § 151 (Vernon Supp.1999). In the absence of such an affidavit, an independent administration is considered closed when debts have been paid so far as the assets will permit and all property has been distributed. *Id.; In re Estate of Hanau,* 806 S.W.2d 900, 903 (Tex.App.—Corpus Christi 1991, writ denied). In this case, the estate closed and limitations began to run on July 21, 1989, when all the debts of the estate had been satisfied and all the estate property had been distributed.[4]

---

2. The record does not reveal which documents Barrett reviewed.

3. The original petition for accounting and distribution is not in the record.

4. Appellants rely on a statement in our opinion in a related case, *Pedraza v. Peña,* 13–97–450–CV (Tex.App.—Corpus Christi September 16, 1999, no pet.) (not designated for publication) where we suggested that the administration of the estate might still be open. However, in that case, the only documents before us were the will, the application for probate of the will, and Peña's motion for summary judgment. From that limited record, we

Limitations may be tolled by the "discovery rule," which provides that a cause of action does not accrue until the plaintiff knows of the facts giving rise to the cause of action. *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex.1994). In cases involving fraud or the breach of a fiduciary duty, limitations does not begin to run until the claimant knew, or in the exercise of reasonable diligence should have known, of facts that would have led to the discovery of the wrongful act.[5] *Little*, 943 S.W.2d at 420.

However, one is charged with constructive notice of the actual knowledge that one could gain by an examination of public records. *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex.1981); *Matter of Estate of Matejek*, 928 S.W.2d 742, 744 (Tex. App.—Corpus Christi 1996), *writ denied*, 960 S.W.2d 650 (Tex.1997). Even in probate cases involving allegations of fraud, Texas courts have refused to apply the discovery rule because of the doctrine of constructive notice and the strong public interest in according finality to probate proceedings. *Little*, 943 S.W.2d at 420–21.

There is authority that an executor of an estate has a fiduciary duty to beneficiaries. *See Humane Soc'y of Austin and Travis County v. Austin Nat'l Bank*, 531 S.W.2d 574, 577 (Tex.1975) (executor of an estate is held to the same fiduciary standards in his administration of the estate as a trustee). There is also authority to the effect that a fiduciary relationship may excuse discovery on the part of the beneficiary of that relationship. *See Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988) (facts which might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved). The Duthu appellants also contend that Peña had an attorney/client relationship with

them, and that the fiduciary duty owed by an attorney to a client is greater than the duty owed by an executor of an estate to the estate beneficiaries. However, we are not aware of any authority, and appellants do not cite any, holding that one type of fiduciary duty is greater than another.

Nor do we agree that the relationship between an executor of an estate and a beneficiary of that estate acts as a bar to the doctrine of constructive notice. To hold that being the beneficiary of an estate excuses one from constructive notice of public records is directly contrary to the Texas Supreme Court's instruction in *Mooney* that "[p]ersons interested in an estate admitted to probate are charged with notice of the contents of probate records." *Mooney*, 622 S.W.2d at 85. The law of constructive notice prevents a beneficiary from relying exclusively upon an executor to defend her interests. *Little*, 943 S.W.2d at 425 (Enoch, J., concurring). Indeed, in light of the constructive notice doctrine, the notion that a person owed a fiduciary duty bears some responsibility to learn when he has been injured is particularly applicable to cases concerning probate disputes. *Id.*

Our opinion in *Jennings v. SRP*, 521 S.W.2d 326 (Tex.Civ.App.—Corpus Christi 1975, no writ) is instructive. In that case, beneficiaries to a will sought to overturn the trial court's disposition of a challenge to the will on the ground that they were not parties to the will challenge. We reversed the judgment of the trial court and rejected the argument that the beneficiaries' interests were adequately represented by the executor of the estate, noting that the executor represents the estate, not the beneficiaries. *Id.* at 330. We also noted that the reason executors are re-

---

were unable to determine when, or even if, the estate was closed. We did not have the extensive record we now have, and, most particularly, the record did not contain the July 21, 1989 judgment which finalized the estate.

**5.** In this case appellants allege a "wrongful act" only indirectly and by implication. Therefore, rather than examining when appellants should have learned of the "wrongful act," we examine when they should have known to file an action asserting the rights they now seek.

quired to post a bond unless waived by the testator is because it is not presumed that the executor adequately represents the beneficiaries' interests. *Id.*

We hold that appellants had constructive notice of all public records relating to McGarr's estate. We next consider whether, from these records, appellants knew, or in the exercise of reasonable diligence should have known, of facts that would have led them to file their action.

Appellants allege that they did not know that much of the debt was accumulated after McGarr became a ward or that there was no court approval for several debts incurred during McGarr's guardianship. They allege that Peña neglected to challenge debts that might have been invalid and engaged in self-dealing in a sale of estate property. They also argue that Peña had a fiduciary duty to the beneficiaries of the estate which he breached through mismanagement and affirmative misrepresentations to the Duthu heirs [6] in telling them that McGarr incurred the debt himself and that the beneficiaries would be personally responsible for the estate's debts if they did not agree to release their claims to the estate. We therefore examine whether these claims could have been discerned from the records on file.

Among the documents appellants had constructive notice of were inventories filed in the guardianship of McGarr on March 21, 1986 and May 6, 1986, and an inventory of the estate filed on November 25, 1987. Examination of the inventories filed in 1986 and 1987 reveals the rapid accumulation of debt. Therefore, appellants are charged with constructive notice

of the rapid accumulation of debt after McGarr's guardianship began. Furthermore, the record before us indicates that only some of the debts incurred during the guardianship were approved by the court. If appellants had examined these records, they would have been alerted to the absence of court approval for other loans.

Appellants allege that Peña and Pedraza engaged in self-dealing in the sale of real estate to El Rancho Potrero Development Company, Inc. However, the warranty deed executed with this transaction and filed in the official records of the Cameron County Clerk lists the grantees as "El Rancho Potrero Development Company" and "Robert Pedraza." Therefore, the nature of this transaction and the appearance of self-dealing could be discerned from the official records.

Because appellants are charged with constructive notice of these records, we hold that, in the exercise of reasonable diligence, they should have known of facts that would have led them to file an action asserting the rights they now seek. We conclude that limitations bars appellants from attaining the relief they now seek.

### Jurisdictional Issues

Appellants raise several jurisdictional complaints. The first we consider is an argument that the estate remains open, and limitations has not run, because the 138th District Court of Cameron County lacked jurisdiction over the bank's foreclosure suit. Appellants maintain that only the county court where the will was filed for probate had jurisdiction over matters pertaining to the estate, relying on section 5(c) of the probate code.[7] However, re-

---

6. Esperanza Suarez, Roberto Candelas, Rogerio Pedraza, and Robert Pedraza do not allege that Peña made misleading statements to them.

7. In those counties where there is a statutory probate court, county court at law, or other statutory court exercising the jurisdiction of a probate court, all applications, petitions and motions regarding probate and administra-

tions shall be filed and heard in such courts and the constitutional county court, rather than in the district courts, unless otherwise provided by the legislature, and the judges of such courts may hear any of such matters sitting for the judge of any of such courts. In contested probate matters, the judge of the constitutional county court may on his own motion, and shall on the motion of any party to the proceeding, transfer the proceeding to

gardless of whether the 138th District Court had jurisdiction, the settlement between Peña as executor and the estate's creditors was a binding contract. As executor, Peña was both authorized and obligated to settle the debts of the estate. The agreement he reached with the bank in 1989 satisfied all the debts of the estate and disposed of all the estate's property. This agreement closed the estate. Tex. Prob.Code Ann. § 151 (Vernon Supp.1999); *Hanau,* 806 S.W.2d at 903.

Appellants also rely on *Farrell v. Cogley,* 146 S.W. 315, 318 (Tex.Civ.App.—San Antonio 1912, writ refused) for the notion that limitations can not be invoked by the executor of an estate against a beneficiary of an estate. Although *Farrell* has not been expressly overruled, the proposition appellant cites it for is incompatible with the Texas Supreme Court's opinions in *Mooney* and *Little.* In both of those cases, persons claiming to be beneficiaries of wills were barred from asserting their claims by limitations. *Little,* 943 S.W.2d at 416, 423; *Mooney,* 622 S.W.2d at 84–85.

■ Finally, appellants argue that the county court lacked jurisdiction to render judgment in this case because appellants relied on fraud as a defense to appellee's claim that limitations had run. Claims of fraud, appellants contend, must be heard by a district court. Appellants also argue that, because a testamentary trust was involved, section 5(d) of the probate code prohibited the county court from exercising jurisdiction.

Section 5(d) provides:

A statutory probate court has concurrent jurisdiction with the district court in all actions by or against a person in the person's capacity as a personal representative, in all actions involving an inter vivos trust, in all actions involving a charitable trust, and in all actions involving a testamentary trust.

the statutory probate court, county court at law, or other statutory court exercising the jurisdiction of a probate court, which may

Tex. Prob.Code Ann. § 5(d) (Vernon Supp. 1999). However, the probate code also gives county courts jurisdiction over matters "appertaining to estates," a phrase which includes "all claims by or against an estate." Tex. Prob.Code Ann. § 4, 5A(a) (Vernon Supp.1999). The Texas Supreme Court has further explained that a matter "appertains to an estate" if the controlling issue in the matter is the settlement, partition, or distribution of an estate. *Seay v. Hall,* 677 S.W.2d 19, 22 (Tex.1984).

We hold that appellants action is a matter "appertaining to an estate," and, therefore, the county court had jurisdiction. Appellants requested an inventory, accounting, and distribution of the estate. These are clearly matters concerning the "settlement, partition, or distribution" of the estate. In this case, the controlling issue is appellants' constructive notice of the probate proceedings that have already taken place. We conclude that the county court properly exercised jurisdiction over this case.

The judgment of the trial court is affirmed.

### OPINION ON MOTION FOR REHEARING

By their motion for rehearing, appellants complain that we neglected to address their first and third issues on appeal. Appellants' first issue asked whether the trial court's ruling of September 14,1998 should be reversed due to the failure of the court reporter to provide a complete reporter's record. Appellants' third issue asked whether reversal was required due to the trial court's failure to enter findings of fact and conclusions of law.

At the time of appellants' brief was filed, two portions of the reporter's record were not in the record. However, these records were subsequently filed prior to submission and are part of the record before us.

then hear the proceeding as if originally filed in such court. Tex. Prob.Code Ann. § 5(c) (Vernon Supp.1999).

Likewise, the trial court has entered findings of fact and conclusions of law, and these are included in the appellate record. Because the record has been supplemented to include the missing items complained of, we find no reversible error in the first and third issues raised by appellants' brief.

The motion for rehearing is overruled.