NUMBER 13-98-598-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


TEXAS COMMERCE BANK-

RIO GRANDE VALLEY, N.A.
, Appellant,


v.



RENE CORREA, AS 

ADMINISTRATOR OF THE 

ESTATE OF ARTHUR 

J. SHWERY, DECEASED
, Appellee.

___________________________________________________________________


On appeal from the 92nd District Court


of Hidalgo County, Texas.


___________________________________________________________________


O P I N I O N



Before Justices Dorsey, Chavez, and Rodriguez


Opinion by Justice Dorsey



 The issue in this case is whether the district court in Hidalgo
County had subject matter jurisdiction over a foreclosure proceeding
which ordered foreclosure of property that was, at one time, part of an
estate. We hold that it did. Because this case involves several different
lawsuits, we have set out separately the facts relevant to each cause.

The Estate Matter


 In 1981, the Will of Arthur Shwery was admitted to probate in a
county court at law in Hidalgo County. The Will appointed an
independent executor and directed that no action other than the
probating and recording of the Will and the return of an inventory,
appraisement and list of claims shall be had in any court in relation to
the settlement or administration of his estate. Accordingly, the county
court at law appointed an independent executor, who subsequently
resigned, and the court appointed several independent co-administrators to serve as his successors.

 Seven years later, the independent co-administrators filed a "Final
Account and Exhibit of Independent Co-Administrators." This
document was verified by each of the administrators. Attached to the
document was an exhibit that listed the assets remaining in the hands
of the administrators. The administrators also filed an application for
approval of the final account and exhibit, and requested the court to
approve of their resignations as administrators.

 The court entered an order approving the final account and exhibit
and the resignations of the administrators that stated:

 The Court, having examined the final account and
exhibit and resignations of Applicants and hearing the
evidence in support of same, finds that the allegations
contained in the Application are true; that notice and citation
have been given in the manner and for the length of time
required by law; that the final account and exhibit of
Applicants filed in this cause complies with the law in every
respect; that it should be approved and filed; that the assets
remaining in the hands of Applicants be delivered to the
persons entitled thereto; and that the resignations of the
Applicants should be accepted and approved;


 It is, therefore, ORDERED, ADJUDGED and DECREED
that the final account and exhibit is hereby approved; and
that the resignations of the Applicants are hereby accepted
and approved.

 No further action was taken in the county court at law regarding
the Estate until the next year, when Texas Commerce Bank-McAllen,
N.A. (herein "TCB" or "the bank")(1) filed an application for appointment
of a temporary administrator.

The Foreclosure Suit


 The next year, 1989, TCB filed a petition in the district court
seeking foreclosure on a piece of property pledged by the co-administrators of the Estate under a deed of trust.(2) This petition named
not only the temporary administrator of Shwery's Estate as a defendant,
but also named each of Shwery's twenty-four heirs. All were served
with citation. TCB filed a motion for summary judgment on its petition.

 In May of 1990, the 93rd District Court granted a judgment of
foreclosure pursuant to TCB's summary judgment motion. The court
also ordered a sheriff's sale of the property. TCB purchased the
property after being the highest bidder at the sheriff's sale held the next
month.(3)

The Environmental Contamination Suit


 Two years later, TCB brought suit against co-owners and prior
owners of the property seeking damages and indemnification for
environmental contamination. This suit named as a defendant the
administrator of Arthur J. Shwery's estate, alleging that the Estate was
a co-owner of the property.

 The Estate filed a counterclaim against TCB seeking a declaratory
judgment that TCB had never acquired ownership of the property. It
argued that the foreclosure was a matter incident to Shwery's Estate
and that the probate court had exclusive subject matter jurisdiction over
it. Accordingly, the district court's order of foreclosure and sheriff's sale
was void. Also, the Estate argued that the district court lacked personal
jurisdiction over any properly authorized personal representative of the
Estate.

 The Estate brought a motion for summary judgment on its
counterclaim, which the trial court granted. The court then severed that
part of the lawsuit, and TCB brought this appeal.

Standard of Review


 This court reviews the granting of summary judgment de novo. 
Natividad v. Alexis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). The Estate,
as movant for summary judgment, had the burden of showing that
there are no genuine issues of material fact and that it is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr.
Property Management, Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 
Because the Estate brought summary judgment on its counterclaim, it
was in the posture of a plaintiff. As movant, the plaintiff must
conclusively prove its entitlement to prevail on each element of the
cause of action as a matter of law. Gulf, Colorado & Santa Fe Ry. Co.
v. McBride, 159 Tex. 442, 322 S.W.2d 492, 500 (1958); Brazos Valley
Community Action Agency v. Robison, 900 S.W.2d 843, 845 (Tex.
App.--Corpus Christi 1995, writ denied). The plaintiff meets the burden
if it produces evidence that is sufficient to support an instructed verdict
at trial. Brazos Valley, 900 S.W.2d at 845.

 The defendant-nonmovant then has an opportunity to show that
the movant did not prove that there were no material issues on the
essential elements of each of the movant's claims. Destec Properties
Ltd. Partnership v. Freestone Cent. Appraisal Dist., 6 S.W.3d 601, 608
(Tex. App.--Waco 1999, no pet.). In deciding whether there is a
material fact issue precluding summary judgment, evidence favorable
to the non-movant will be taken as true, every reasonable inference
must be indulged in favor of the non-movant, and any doubts must be
resolved in its favor. Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d
796, 800 (Tex. 1994).

 Application


A. Jurisdictional Issues


 The Estate sought a judgment declaring that TCB owned no
interest in the property because the district court lacked jurisdiction over
the foreclosure proceedings. Actions taken by a court without subject
matter jurisdiction are void. Mapco, Inc. v. Forrest, 795 S.W.2d 700,
703 (Tex. 1990); Garcia-Marroquin v. Nueces County Bail Bond Bd., 1
S.W.3d 366, 373 (Tex. App.--Corpus Christi 1999, no pet.). The
question of whether the district court possessed jurisdiction to order the
foreclosure and sheriff's sale of the property was the proper subject of
a declaratory judgment action. See Tex. Civ. Prac. & Rem Code Ann. §
37.004 (Vernon 1997) (authorizing declaratory judgment actions for
construction of a written instrument); and § 73.005 (authorizing them
for declaration of rights with respect to estate matters).

 Article 5, section 8 of the Texas Constitution defines the
jurisdiction of the district courts. Their jurisdiction "consists of
exclusive, appellate, and original jurisdiction of all actions, proceedings,
and remedies, except in cases where exclusive, appellate, or original
jurisdiction may be conferred by this Constitution or other law on some
other court, tribunal, or administrative body." Tex. Const. art. 5, § 8.
The probate code limits the jurisdiction of the district courts by
conveying to other courts exclusive jurisdiction over certain probate
matters. See Tex. Prob. Code Ann. § 5 (Vernon supp. 1999).

 Section 5(b) of the probate code states that:

 [I]n those counties where there is a statutory probate court,
county court at law, or other statutory court exercising the
jurisdiction of a probate court, all applications, petitions and
motions regarding probate and administrations shall be filed
and heard in such courts and the constitutional county
court, rather than in the district courts . . . .


Id. at 5(b).

 That statute also grants to all courts that exercise original probate
jurisdiction the power to hear all matters incident to an estate. Id. at
§5(e). "Matters incident to an estate" includes a suit for foreclosure of
estate property. Id. at § 5A. Not only does the court have the power to
hear matters incident to an estate, but it has exclusive jurisdiction over
all such matters when an estate administration is pending in that court. 
Bailey v. Cherokee County Appraisal Dist., 862 S.W.2d 581, 586 (Tex.
1993). Thus, in this case, the Estate argues that TCB's foreclosure
action was a matter incident to Shwery's estate over which the county
court at law had exclusive subject matter jurisdiction because the
administration of Shwery's Estate was pending in that court.

 However, we hold that the Estate's administration was closed
when the foreclosure suit was filed. "A court empowered with probate
jurisdiction may only exercise its probate jurisdiction over matters
incident to an estate when a probate matter proceeding related to such
matter is already pending." Bailey, 862 S.W.2d at 585; Estate of Hanau,
806 S.W.2d 900, 904 (Tex. App.--Corpus Christi 1991, writ denied). 
Where the record does not reveal that a probate proceeding was taking
place or was pending when suit was filed, section 5 of the probate code
dealing with matters incident to an estate is not triggered. Schuld v.
Dembrinski, 12 S.W.3d 485, 487 (Tex. App.--Dallas 2000, no pet.);
Qualia v. Qualia, 878 S.W.2d 339, 341 (Tex. App.--San Antonio 1994,
writ denied); Sumaruk v. Todd, 560 S.W.2d 141, 144 (Tex. Civ.
App.--Tyler 1977, no writ). Hence, because no probate proceeding was
ongoing or pending when TCB filed its foreclosure proceeding, the
county court at law did not have exclusive jurisdiction over matters
incident to Shwery's estate.

B. Closing of the Independent Administration


 An independent executor may formally close an independent
administration by filing a final account verified by affidavit. Tex. Prob.
Code Ann. § 151 (Vernon Supp. 1999); Estate of McGarr, 10 S.W.3d
373, 376 (Tex. App.--Corpus Christi 1999, no pet.). Section 151 of the
probate code provides that:

 When all of the debts known to exist against the estate have
been paid, or when they have been paid so far as the assets
in the hands of the independent executor will permit, when
there is no pending litigation, and when the independent
executor has distributed to the persons entitled thereto all
assets of the estate, if any, remaining after payment of
debts, the independent executor may file with the court:


 (1) a closing report verified by affidavit that shows:


 (i) The property of the estate which came
into the hands of the independent executor;


 (ii) The debts that have been paid;


 (iii) The debts, if any, still owing by the
estate;


 (iv) The property of the estate, if any,
remaining on hand after payment of debts;
and


 (v) The names and residences of the
persons to whom the property of the estate,
if any, remaining on hand after payment of
debts has been distributed; and


 (2) signed receipts or other proof of delivery of property
to the distributees named in the closing report if the
closing report reflects that there was property
remaining on hand after payment of debts.

 

Tex. Prob. Code Ann. § 151(a) (Vernon Supp. 2000).

 The filing of such an affidavit and proof of its delivery terminates
the independent administration and the power and authority of the
independent executor. Id. at § 151(b). At that point, persons dealing
with properties of the estate or claims against the estate shall deal
directly with the distributees of the estate. Id. The affidavit closing the
independent administration gives the persons described in the will as
entitled to receive particular assets the power to enforce their right to
payment or transfer by suit. Id. at § 151(c); Hanau, 800 S.W.2d at 373. 
It does not, however, relieve the executor of liability for any
mismanagement of the estate or from liability for any false statements
in the affidavit. Tex. Prob. Code Ann. § 151(c); Hanau, 800 S.W.2d at
373.

 An independent administration also can be closed without filing
an affidavit. Even in the absence of such an affidavit, an independent
administration is considered closed when debts have been paid so far
as the assets will permit and all property has been distributed. Tex.
Prob. Code Ann. § 151; Hanau, 806 S.W.2d at 903. This court has
explained:

 An independent administration of an estate is considered
closed when the debts have been paid and the property has
been distributed and there is no more need for
administration. The filing of a verified final account with the
probate court pursuant to section 151 merely formally closes
an independent administration.


Hanau, 806 S.W.2d at 903; see also McGarr, 10 S.W.3d at 376.

 This Court has noted that we must look beyond the title of the
final accounting to its contents to determine if the document is in fact
a Section 151 affidavit. Hanau, 806 S.W.2d at 903. "If the instrument
before the court is filed as the final accounting but is in reality only a
presentation of the status of the estate and if it is apparent from the
instrument that the estate is not ready to be closed, then, to close the
estate would ignore the purpose of the statute." Id.; accord Estate of
Canales, 837 S.W.2d 662, 669 (Tex. App.--San Antonio 1992, no writ). 
Still, where, as here, the affidavit generally comports with the
requirements of section 151, the Estate appears to need no further
administration, the probate court has both approved the affidavit and
allowed resignation of the administrators without appointing
successors, the verified account is sufficient to close the administration. 
Even the probate court has no power to "disapprove" a final account.(4)

 In this case, the application for approval of the final account and
resignation and the final account and exhibit, along with the court's
order approving same, shows that section 151's requirements were
met. The final account and exhibit was sworn to by the administrators,
as required by section 151. See Tex. Prob. Code Ann. § 151 (a)(1)
(Vernon Supp. 2000). Also, the exhibit listed the debts still owing by
the Estate and the property of the Estate remaining on hand after
payment of debts as required. See id. at § 151 (a)(1) (iii), (iv).

 Section 151 also requires that a closing affidavit show (1) the
property of the estate which came into the hands of the independent
executor, (2) the debts that have been paid, (3) the names and
residences of the distributees of the property remaining after payment
of debts, and (4) proof of delivery of the property. While the final
account and exhibit did not contain this specific information, the court's
order approving the final account stated that notice and citation had
been given in the manner and for the length of time required by law and
that the final account and exhibit complied with the law in every
respect. The court's order also directed that the property be distributed
to the persons entitled thereto. Upon entry of that order, each person
entitled to distribution had the right to demand such distribution.

 Also, it appears from the documents filed by the administrators
that there was no need for further administration of the Estate. As we
have noted, an independent administration of an estate is considered
closed when the debts have been paid, the property has been
distributed and there is no more need for administration, regardless of
whether a section 151 closing affidavit has been filed. McGarr, 10
S.W.3d at 376; Hanau, 806 S.W.2d at 903. The Exhibit listed all the
assets left on hand which totaled $784,705.94. The only debt of the
Estate listed on the Exhibit was the remaining estate tax owed, which
was to be paid in annual installments.(5) No installment payment was
due at the time the final account was filed.

 We hold that the Estate of Arthur J. Shwery was closed, at the
latest, on the day the final account and resignation of the co-administrators was approved by the county court at law. Accordingly,
the county court at law lost jurisdiction over matters incident to the
estate on March 14, 1988. The district court had authority over the
later foreclosure proceeding because the county court no longer had
exclusive jurisdiction. At a minimum, we hold that the Estate did not
conclusively establish that the Estate remained pending in the county
court at law at the time of the foreclosure action.

C. Personal Jurisdiction over the Temporary Administrator


 The Estate argues that the district court never acquired in
personam jurisdiction over the temporary administrator who was
appointed after the Estate was closed. Because we have held that the
Estate was closed at the time the foreclosure suit was filed, that
question is moot.

 TCB properly named and served all devisees of the Estate in the
foreclosure proceeding, as required by section 151(b). See Tex. Prob.
Code Ann. 151(b) (actions after closing of an estate are to be taken
directly against the distributees). Thus, personal jurisdiction over the
temporary administrator was not required in order to exercise
jurisdiction over the property because the distributees of the property
were properly before the court.

 Likewise, we disagree with the Estate's argument that the Estate
could not have been closed when the foreclosure proceeding was filed
because a temporary administrator had been appointed and was
serving as such. The temporary administrator, Robert Rex Williams,
was appointed shortly before the foreclosure suit was filed in response
to an application filed by TCB. His appointment expired after 180 days,
on February 13, 1990. He stated in his sworn final account, filed the
day after his term expired, that he accepted service of TCB's foreclosure
petition on February 8, 1990. He also stated that, in his capacity as
temporary administrator, he had attempted to sell the property, but was
unable to procure a sales contract. Importantly, he stated that no
property of the Estate ever came into his possession, and, for that
reason, he was not obligated to account for any Estate property in his
final accounting.

 TCB was required to set forth the reasons it sought appointment
of a temporary administrator in its application. It stated that:

 [TCB] holds a promissory note . . . executed by six of the
beneficiaries of this Estate . . . payable to the order of [TCB]
. . . secured by a Deed of Trust . . . executed by all of the
then-serving Independent Co-Administrators of this Estate .
. . .


Further, TCB stated in its application that:

 On information and belief, this Estate owes the Department
of the Treasury, Internal Revenue Service, in excess of
$175,000.00 for Federal estate taxes . . . [and] this Estate
has insufficient funds to satisfy the next annual installment
due on that debt, which is due to be paid, unless earlier
accelerated, on or before February 27, 1990.


 . . . [TCB] believes that the only possible funds for the
proper satisfaction of the two debts . . . must emanate from
the sale of the subject property. In this connection and as
the situation now exists, any potential purchaser of the
subject property has no one in authority to contact regarding
the subject property, no one with authority to negotiate a
proposed sale, and no one with authority to bind effectively
this Estate should any offered terms of sale be acceptable. .
. . [TCB] asserts that it is absolutely mandatory that a
personal representative be appointed immediately and that
such personal representative be given the right . . . to
receive, evaluate, and circulate for review among persons
interested in this Estate any and all contracts tendered for
the purchase of the subject property, and to schedule the
same for a hearing before this Court.


 We do not pass on the propriety of the county court at law's
appointment of a temporary administrator in response to the Bank's
application as that question is not before this court. However, the
property had been distributed at the time TCB's application was filed. 
All indications are that at the time of the filing the foreclosure suit, the
distributees, not the Estate, held title to the property that had been
pledged in the deed of trust. 

 Moreover, TCB was not a creditor of the Estate so much as it was
a creditor of the beneficiaries of the Estate. The promissory note was
entered into by four beneficiaries of the Estate, for the purpose of
carrying out a settlement of Estate matters. The administrators pledged
the Estate property in the deed of trust pursuant to that agreement also. 
Neither the note nor the deed was an obligation of Shwery, nor were
they directed by Shwery's Will. We hold that the trial court's
appointment of a temporary administrator does not compromise the
validity of the foreclosure proceeding which was brought in a proper
court, naming the proper parties.

 Accordingly, because we find that the trial court erred in granting
summary judgment in favor of the Estate on its counterclaim seeking
declaratory judgment, we reverse the summary judgment and remand
this cause to the trial court for further proceedings consistent with this
opinion.


 ______________________________

 J. BONNER DORSEY,

 Justice


Publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 24th day of August, 2000. 

1. Now, Texas Commerce Bank--Rio Grande Valley, N.A.
2. The property that was pledged in the deed of trust was actually
14/17ths of a larger tract of property. The remaining 3/17ths of that
tract was not pledged.
3. Although we do not find it legally significant to the resolution of
this case, we note that in 1991, Stewart Title Guaranty Company filed
suit against the Estate and anyone who had received distributions from
the Estate. This suit was filed in the 139th District Court of Hidalgo
County. The title company alleged that the Estate failed to pay federal
income tax, resulting in the title company having to pay a tax lien on the
TCB property. The Estate, in turn, brought a third party action against
TCB requesting partition of the property. Its third party petition, the
Estate "admitted" that the Estate owned an undivided 3/17th of the
tract in fee simple, and that TCB owned an undivided 14/17th interest
in the property. It appears that this action is still pending.
4. The supreme court has explained that:


 [T]he probate code in no manner provides for the approval or
disapproval of the substance of a 'Final Accounting' by an
independent executor . . . . Section 151 is purely
administrative in nature, providing simply a method whereby
the closing of an independent administration can be made a
matter of record. It appears, therefore, that Section 151
cannot be construed as specifically providing the probate
court with the power to look to the substance of the
accounting in an effort to determine whether it is accurate or
whether the executor has properly administered the estate.


Burke v. Satterfield, 525 S.W.2d 950, 953 (Tex. 1975).
5. The estate tax owed at that time, including interest, was
$241,561.44.