# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-02-00596-CV
NO. 03-02-00632-CV

**Robert Barton, Appellant**

**v.**

**Bettie Buchanan, Appellee**

**&**

**Bettie Buchanan, Walter L. Jefferson, Barbara Lane Jefferson, and
Julia Lane Goodwin, Appellants**

**v.**

**Robert Barton, Appellee**

**FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY
NOS. 98-4923 & 90-1497-CCL, HONORABLE LARRY D. WAGENBACH, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This cause involves cousins who dispute the location of the property line between tracts of land they inherited from their respective parents. Following a long and tortured procedural history, the trial court sitting as a probate court rendered judgment on the jury's verdict, establishing the property line. The only issue on appeal is whether the trial court had jurisdiction over the cause. We hold that it did and affirm the trial court's judgment.

**Factual Background**

Two brothers, W.A. Barton and Johnnie Barton, owned an approximately 2000-acre tract of land in Bastrop County and farmed the land as an undivided joint enterprise. Prior to their ownership, the tract had been divided approximately in half by a fence. By the time W.A. and Johnnie took possession, the two tracts had been merged into common ownership and each brother held an undivided interest in the whole tract. In 1960, W.A. and Johnnie executed a partition deed and again divided the land in half; W.A. took the northern portion, known historically as the Warren Place, and Johnnie took the southern portion, known as the Barton Place. The 1960 partition deed divides the land by a metes and bounds description. In 1987, W.A. died, and his estate, including the Warren Place, passed to Robert Barton and his siblings. In 1988, Johnnie died, and his estate passed to his daughter, Bettie Buchanan, and to the estate of Helen Waugh Barton, his late wife; assets belonging to Helen's estate were divided between Buchanan and her half-sisters Julia Lane Goodwin and Barbara Lane Jefferson (collectively, "Buchanan"). In 1989, Barton commissioned Dale Olson to conduct a survey to locate the property line dividing the Warren Place from the Barton Place. Buchanan and others had always assumed that the properties were divided along a strip once marked by a road, but Olson's survey showed that the boundary was actually several hundred feet south of that assumed line. This diminished the Barton Place by some ninety-two acres. In 1989, Barton built a fence along the new property line defined by the Olson survey, claiming the ninety-two acres Buchanan had understood belonged to Johnnie's estate. In 1990, while the estates of W.A., Johnnie, and Helen were pending in the statutory county court sitting in probate, Buchanan, as independent administratrix of Johnnie's estate, filed in the same court a trespass-to-try-title suit

2

against Barton as an individual and as co-independent administrator of W.A.'s estate, claiming the disputed ninety-two acres belonged to Johnnie's and Helen's estates, not W.A.'s estate (our cause number 03-02-00632-CV, trial court cause number 90-1497-CCL).[1]

In 1996, Buchanan's suit was dismissed for want of prosecution, and in 1998 she filed a petition for bill of review, seeking to reinstate her trespass-to-try-title suit (our cause number 03-02-00596-CV, trial court cause number 98-4923).[2] In 2001, the county court granted the bill of review and reinstated Buchanan's suit; in 2002, the title dispute was submitted to a jury. After the jury returned a verdict in favor of Barton, Buchanan filed a motion to dismiss the suit for lack of jurisdiction, which the trial court overruled. Buchanan appeals from the judgment entered in the trespass-to-try-title suit, arguing that the trial court lacked subject matter jurisdiction over the reinstated trespass-to-try-title suit because the probate estates had closed. Barton brings an appeal in the bill-of-review suit, arguing that if the trial court lacked jurisdiction to define the boundaries of the two tracts, it erred in granting the bill of review and reinstating the trespass-to-try-title suit.[3]

---

[1] Buchanan was originally joined in her trespass-to-try-title suit by the independent executor of Helen Barton's estate.

[2] Buchanan filed her bill of review in her name alone; no other parties were named as plaintiffs. Buchanan initially named the other co-independent executor of W.A. Barton's estate as a second defendant, along with Barton, but later dropped her as a party.

[3] Buchanan and others filed their notice of appeal in the trespass-to-try-title suit, trial court cause number 90-1497, our cause number 03-02-00632-CV; therefore, they are appellants in the trespass-to-try-title suit and Barton is appellee. After Buchanan, et al., filed their notice of appeal, Barton filed his notice of appeal from the reinstatement order entered in Buchanan's bill of review, trial court cause number 98-4923, our cause number 03-02-00596-CV. Because the bill of review was brought by Buchanan alone, she is the only appellee in that cause. Barton filed in this Court an unopposed motion to consolidate the appeals and designate the parties as appellants/cross-appellees (Buchanan, et al.) and appellee/cross-appellant (Barton). We consolidated the appeals for consideration only, leaving the separate cause numbers because the appeals arose from two trial court

3

**Did the Trial Court Have Subject Matter Jurisdiction Over the Suit?**

Whether a trial court has subject matter jurisdiction is a question of law that we review *de novo*. *Herring v. Welborn*, 27 S.W.3d 132, 136 (Tex. App.—San Antonio 2000, pet. denied). Generally, district courts have exclusive jurisdiction to determine title to real property. *See* Tex. Const. art. 5, § 8; Tex. Gov't Code Ann. § 26.043 (West 1988); *Falcon v. Ensignia*, 976 S.W.2d 336, 338 (Tex. App.—Corpus Christi 1998, no pet.). However, a county court at law sitting in probate has jurisdiction to hear "all matters incident to an estate" already pending before the court. Tex. Prob. Code Ann. § 5(f) (West 2003); *see Bailey v. Cherokee County Appraisal Dist.*, 862 S.W.2d 581, 585 (Tex. 1993); *Goodman v. Summit at West Rim, Ltd.*, 952 S.W.2d 930, 933 (Tex. App.—Austin 1997, no pet.). Matters incident to an estate are "generally all matters relating to the settlement, partition, and distribution" of the estate, including claims by or against the estate and actions to try title to land incident to the estate. Tex. Prob. Code Ann. § 5A(a) (West 2003); *see Bailey*, 862 S.W.2d at 585. Therefore, a statutory county court sitting in probate would have jurisdiction over a suit regarding title to real property only if it was incident to an estate being probated in the county court. *Goodman*, 952 S.W.2d at 933.

Although courts generally do not lose subject matter jurisdiction once it attaches, a probate court is a specialized court that can lose jurisdiction over matters incident to an estate if it loses jurisdiction over the probate matters. *Id.* (citing *In re Estate of Hanau*, 806 S.W.2d 900, 904 (Tex. App.—Corpus Christi 1991, writ denied)). In other words, once an estate closes, incident

causes. Although we designated the parties as requested for ease of reference in the parties' briefs, there is no cross-appeal, but two separate appeals.

claims are pendent or ancillary to nothing, and the probate court loses jurisdiction. *Id.*; *see also*

*Schuld v. Dembrinski*, 12 S.W.3d 485, 487 (Tex. App.—Dallas 2000, no pet.) ("the pendency of a

probate proceeding is a requisite for a court's exercise of jurisdiction over matters related to it");

*Garza v. Rodriguez*, 18 S.W.3d 694, 698 (Tex. App.—San Antonio 2000, no pet.) ("before a matter

can be regarded as incident to an estate . . . a probate proceeding must actually be pending").

This is an unusual situation in which the plaintiff fought strenuously to have her cause

reinstated, seeking to invalidate a boundary between properties incident to three estates, then lost on

the merits, and now seeks a declaration that the statutory county court lacked jurisdiction to decide

the dispute. The record does not reflect that Buchanan filed a formal plea to the jurisdiction or

motion to dismiss until after the jury returned its adverse verdict.[4] To the contrary, her amended

petition, filed after the reinstatement, stated, "This cause of action involves a controversy as to the

location of a boundary line between two tracts of land . . . located in Bastrop County, Texas, fixing

venue for this action in Bastrop County and *jurisdiction in this Honorable Court*." (Emphasis

added.)

Buchanan moved to dismiss only after the jury returned its verdict that the Olson

survey properly located the dividing line between the Warren Place, belonging to W.A.'s estate, and

the Barton Place, belonging to Johnnie's and Helen's estates. She attached (1) a 1993 document

from the administrator of Helen's estate reciting that the estate's administration was "substantially

---

[4] Before the cause was tried to the jury, Buchanan's attorney wrote a letter to the trial court questioning whether the court had jurisdiction and attaching a proposed order of dismissal if the court agreed that jurisdiction was wanting. Barton, who on appeal contends that the trial court had jurisdiction to enter its judgment in his favor, filed a plea to the jurisdiction opposing the reinstatement.

complete," (2) a 2001 tax form indicating that all assets of Johnnie's estate had been distributed, and (3) her affidavit, in which she states, "From the records of the probate proceedings in the Estate of W.A. Barton, Deceased, it is apparent that all matters in the probate proceedings of Estate of W.A. Barton, Deceased concluded several years ago." Thus, she argues, all three estates were closed and the probate court lacked jurisdiction over her suit to try title.

The independent administration of a decedent's estate may be formally closed by the administrator's filing of a final account verified by affidavit. Tex. Prob. Code Ann. § 151 (West 2003); *Texas Commerce Bank-Rio Grande Valley, N.A. v. Correa*, 28 S.W.3d 723, 727-28 (Tex. App.—Corpus Christi 2000, pet. denied); *Hanau*, 806 S.W.2d at 903. A distributee of the estate may also file an application to close the administration. Tex. Prob. Code Ann. § 152 (West 2003). However, an affidavit or application for closure is not required to close an independent administration; an independent administration is considered closed when all property has been distributed and debts have been paid as fully as the assets allowed. *Correa*, 28 S.W.3d at 728; *Hanau*, 806 S.W.2d at 903. *But see Ford v. Roberts*, 478 S.W.2d 129, 132 (Tex. Civ. App.—Dallas 1972, writ ref'd n.r.e.) (quoting *Bradford v. Bradford*, 377 S.W.2d 747, 749 (Tex. Civ. App.—Texarkana 1964, writ ref'd n.r.e.)) (independent administration is not closed "until the independent executor, or someone interested in the estate, filed the necessary pleadings and asks the county court to declare the administration closed").

Barton responds, and we agree, that the record does not establish that the probate court affirmatively lacked jurisdiction. This title dispute dates back to 1990, when all three estates were open and this suit to determine title was properly within the probate jurisdiction of the court

as a matter incident to those estates. *See Seay v. Hall*, 677 S.W.2d 19, 23 (Tex. 1984) (matters "appertaining to" or "incident to" estate are those in which controlling issue is settlement, partition, or distribution of estate). From 1990, when Buchanan initiated this lawsuit, until the present there has been an ongoing dispute as to which brother's estate held title to the ninety-two acres. Despite the intervening dismissal and subsequent bill of review, the issue of title to the disputed acres was never resolved until the jury in this cause determined that the 1989 survey properly described the boundary line dividing the two brothers' properties. The three estates ostensibly sought to distribute the same piece of property to different heirs, and the estates could not be fully concluded while there was still a dispute over title to the property. *See English v. Cobb*, 593 S.W.2d 674, 676 (Tex. 1979) ("The determination of a decedent's right to probate assets necessarily falls within the scope of being an action 'incident to an estate.' Furthermore, the outcome of this suit will have a direct bearing on the assimilation, collection, and distribution of Mrs. English's estate."). Only after the boundary between the properties was legally established did the heirs know who owned the disputed acreage. Although the properties in question may have been deeded to their distributees before then, the ongoing title suit clouded the title to the properties the heirs received from W.A.'s and Johnnie's estates.

Further, the probate code provides that an independent administrator may file a final accounting verified by affidavit that essentially closes an estate if the estate has been distributed and "*there is no pending litigation.*" Tex. Prob. Code Ann. § 151(a) (emphasis added). The document Buchanan presented to show that Helen's estate was closed is not a final accounting and affidavit,

7

and was signed while Buchanan's initial trespass-to-try-title suit was pending.[5] A formal administrator's accounting and affidavit is not necessary to close an estate, but the language of section 151(a) supports our reasoning that an estate is not considered closed if there is ongoing litigation that clouds the title of the property sought to be distributed.

The record does not support a finding that the estates of W.A., Johnnie, and Helen had formally closed, and the cloud on title to probate assets pending since 1990 conferred jurisdiction on the statutory county court sitting in probate to resolve this dispute that was unquestionably incident to the probate estates.[6] *See Bunnell v. Jordan*, 807 S.W.2d 1, 3 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (in question of whether probate court had jurisdiction to hear matter arguably incident to estate, "[w]hen jurisdiction is doubtful, we resolve all intendments in the pleadings in favor of jurisdiction"); *see also Graham v. Graham*, 733 S.W.2d 374, 378 (Tex. App.—Amarillo 1987, writ ref'd n.r.e.) ("Once jurisdiction attaches, it continues until the estate is closed."). We overrule Buchanan's issue on appeal.

---

[5] Nor does Buchanan's statement that it is "apparent" that W.A.'s estate had concluded establish as a matter of law that the estate was closed.

[6] Even if we agreed with Buchanan that the trial court lacked jurisdiction, any order rendered by a trial court lacking in jurisdiction, other than a motion to dismiss, is void and should be regarded as if it never existed. *See State ex rel. Latty v. Owens*, 907 S.W.2d 484, 485 (Tex. 1995); *Greathouse v. McConnell*, 982 S.W.2d 165, 167 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Hudson v. Winn*, 859 S.W.2d 504, 506 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Pampell v. Pampell*, 699 S.W.2d 355, 357 (Tex. App.—Austin 1985, no writ). Therefore, the reinstatement order would be void for lack of jurisdiction. *See Owens*, 907 S.W.2d at 485; *Hudson*, 859 S.W.2d at 506. In other words, the trial court could not both have had jurisdiction to reinstate the trespass-to-try-title suit and then immediately have lost jurisdiction to resolve that dispute.

## Conclusion

The trial court did not err in refusing to dismiss Buchanan's suit for want of jurisdiction and in entering judgment on the jury's verdict.  Due to the disposition of Buchanan's issue, we need not address Barton's appeal.  We therefore dismiss Barton's appeal and dismiss Buchanan's motion to dismiss Barton's appeal.  We affirm the trial court's judgment on the jury's verdict.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   August 14, 2003