### TEXAS COMMERCE BANK–RIO GRANDE VALLEY, N.A., Appellant,

v.

### Rene CORREA; as Administrator of the Estate of Arthur J. Shwery, Deceased, Appellee.

No. 13–98–598–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 24, 2000.

Rehearing Overruled Sept. 28, 2000.

---

Chris A. Brisack, Neil E. Norquest, Norquest & Brisack, McAllen, Gilberto Hinojosa, Magallanes & Hinojosa, Brownsville, Norton A. Colvin, Jr., Rodriguez, Colvin & Chaney, Brownsville, J. Scott McLain, Victor M. Carrera, Reed, Carrera & McLain, L.L.P., McAllen, for Appellant.

Rene Correa, Weslaco, for Appellee.

Before Justices DORSEY, CHAVEZ, and RODRIGUEZ.

## O P I N I O N

Opinion by Justice DORSEY.

The issue in this case is whether the district court in Hidalgo County had subject matter jurisdiction over a foreclosure proceeding which ordered foreclosure of property that was, at one time, part of an estate. We hold that it did. Because this case involves several different lawsuits, we have set out separately the facts relevant to each cause.

### THE ESTATE MATTER

In 1981, the Will of Arthur Shwery was admitted to probate in a county court at law in Hidalgo County. The Will appointed an independent executor and directed that no action other than the probating and recording of the Will and the return of an inventory, appraisement and list of claims shall be had in any court in relation to the settlement or administration of his estate. Accordingly, the county court at law appointed an independent executor, who subsequently resigned, and the court appointed several independent co-administrators to serve as his successors.

Seven years later, the independent co-administrators filed a "Final Account and Exhibit of Independent Co–Administrators." This document was verified by each of the administrators. Attached to the document was an exhibit that listed the assets remaining in the hands of the administrators. The administrators also filed an application for approval of the final account and exhibit, and requested the court to approve of their resignations as administrators.

The court entered an order approving the final account and exhibit and the resignations of the administrators that stated:

The Court, having examined the final account and exhibit and resignations of

Applicants and hearing the evidence in support of same, finds that the allegations contained in the Application are true; that notice and citation have been given in the manner and for the length of time required by law; that the final account and exhibit of Applicants filed in this cause complies with the law in every respect; that it should be approved and filed; that the assets remaining in the hands of Applicants be delivered to the persons entitled thereto; and that the resignations of the Applicants should be accepted and approved;

It is, therefore, ORDERED, ADJUDGED and DECREED that the final account and exhibit is hereby approved; and that the resignations of the Applicants are hereby accepted and approved.

No further action was taken in the county court at law regarding the Estate until the next year, when Texas Commerce Bank–McAllen, N.A. (herein "TCB" or "the bank")[1] filed an application for appointment of a temporary administrator.

### THE FORECLOSURE SUIT

The next year, 1989, TCB filed a petition in the district court seeking foreclosure on a piece of property pledged by the co-administrators of the Estate under a deed of trust.[2] This petition named not only the temporary administrator of Shwery's Estate as a defendant, but also named each of Shwery's twenty-four heirs. All were served with citation. TCB filed a motion for summary judgment on its petition.

In May of 1990, the 93rd District Court granted a judgment of foreclosure pursuant to TCB's summary judgment motion. The court also ordered a sheriff's sale of the property. TCB purchased the property after being the highest bidder at the sheriff's sale held the next month.[3]

---

1. Now, *Texas Commerce Bank—Rio Grande Valley, N.A.*

2. The property that was pledged in the deed of trust was actually 14/17ths of a larger tract

of property. The remaining 3/17ths of that tract was not pledged.

3. Although we do not find it legally significant to the resolution of this case, we note that in

The Environmental Contamination Suit

Two years later, TCB brought suit against co-owners and prior owners of the property seeking damages and indemnification for environmental contamination. This suit named as a defendant the administrator of Arthur J. Shwery's estate, alleging that the Estate was a co-owner of the property.

The Estate filed a counterclaim against TCB seeking a declaratory judgment that TCB had never acquired ownership of the property. It argued that the foreclosure was a matter incident to Shwery's Estate and that the probate court had exclusive subject matter jurisdiction over it. Accordingly, the district court's order of foreclosure and sheriff's sale was void. Also, the Estate argued that the district court lacked personal jurisdiction over any properly authorized personal representative of the Estate.

The Estate brought a motion for summary judgment on its counterclaim, which the trial court granted. The court then severed that part of the lawsuit, and TCB brought this appeal.

### Standard of Review

This court reviews the granting of summary judgment *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). The Estate, as movant for summary judgment, had the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Property Management, Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Because the Estate brought summary judgment on its counterclaim, it was in the posture of a plaintiff. As movant, the plaintiff must conclusively prove its

entitlement to prevail on each element of the cause of action as a matter of law. *Gulf, Colorado & Santa Fe Ry. Co. v. McBride*, 159 Tex. 442, 322 S.W.2d 492, 500 (1958); *Brazos Valley Community Action Agency v. Robison*, 900 S.W.2d 843, 845 (Tex.App.—Corpus Christi 1995, writ denied). The plaintiff meets the burden if it produces evidence that is sufficient to support an instructed verdict at trial. *Brazos Valley*, 900 S.W.2d at 845.

The defendant-nonmovant then has an opportunity to show that the movant did not prove that there were no material issues on the essential elements of each of the movant's claims. *Destec Properties Ltd. Partnership v. Freestone Cent. Appraisal Dist.*, 6 S.W.3d 601, 608 (Tex. App.—Waco 1999, pet. denied). In deciding whether there is a material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts must be resolved in its favor. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex.1994).

### Application

#### A. Jurisdictional Issues

The Estate sought a judgment declaring that TCB owned no interest in the property because the district court lacked jurisdiction over the foreclosure proceedings. Actions taken by a court without subject matter jurisdiction are void. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex.1990); *Garcia–Marroquin v. Nueces County Bail Bond Bd.*, 1 S.W.3d 366, 373 (Tex.App.—Corpus Christi 1999, no pet.). The question of whether the district court possessed jurisdiction to or-

1991, Stewart Title Guaranty Company filed suit against the Estate and anyone who had received distributions from the Estate. This suit was filed in the 139th District Court of Hidalgo County. The title company alleged that the Estate failed to pay federal income tax, resulting in the title company having to pay a tax lien on the TCB property. The

Estate, in turn, brought a third party action against TCB requesting partition of the property. Its third party petition, the Estate "admitted" that the Estate owned an undivided 3/17th of the tract in fee simple, and that TCB owned an undivided 14/17th interest in the property. It appears that this action is still pending.

der the foreclosure and sheriff's sale of the property was the proper subject of a declaratory judgment action. *See* TEX. CIV. PRAC. & REM CODE ANN. § 37.004 (Vernon 1997) (authorizing declaratory judgment actions for construction of a written instrument); and § 37.005 (authorizing them for declaration of rights with respect to estate matters).

Article 5, section 8 of the Texas Constitution defines the jurisdiction of the district courts. Their jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." TEX. CONST. art. 5, § 8. The probate code limits the jurisdiction of the district courts by conveying to other courts exclusive jurisdiction over certain probate matters. *See* TEX. PROB.CODE ANN. § 5 (Vernon Supp.1999).

Section 5(b) of the probate code states that:

[I]n those counties where there is a statutory probate court, county court at law, or other statutory court exercising the jurisdiction of a probate court, all applications, petitions and motions regarding probate and administrations shall be filed and heard in such courts and the constitutional county court, rather than in the district courts. . . .

*Id.* at 5(b).

■ That statute also grants to all courts that exercise original probate jurisdiction the power to hear all matters incident to an estate. *Id.* at § 5(e). "Matters incident to an estate" includes a suit for foreclosure of estate property. *Id.* at § 5A. Not only does the court have the power to hear matters incident to an estate, but it has exclusive jurisdiction over all such matters when an estate administration is pending in that court. *Bailey v. Cherokee County Appraisal Dist.,* 862 S.W.2d 581, 586 (Tex.1993). Thus, in this case, the Estate argues that TCB's foreclo-

sure action was a matter incident to Shwery's estate over which the county court at law had exclusive subject matter jurisdiction because the administration of Shwery's Estate was pending in that court.

■ However, we hold that the Estate's administration was closed when the foreclosure suit was filed. "A court empowered with probate jurisdiction may only exercise its probate jurisdiction over matters incident to an estate when a probate matter proceeding related to such matter is already pending." *Bailey,* 862 S.W.2d at 585; *Estate of Hanau,* 806 S.W.2d 900, 904 (Tex.App.—Corpus Christi 1991, writ denied). Where the record does not reveal that a probate proceeding was taking place or was pending when suit was filed, section 5 of the probate code dealing with matters incident to an estate is not triggered. *Schuld v. Dembrinski,* 12 S.W.3d 485, 487 (Tex.App.—Dallas 2000, no pet.); *Qualia v. Qualia,* 878 S.W.2d 339, 341 (Tex.App.—San Antonio 1994, writ denied); *Sumaruk v. Todd,* 560 S.W.2d 141, 144 (Tex.Civ. App.—Tyler 1977, no writ). Hence, because no probate proceeding was ongoing or pending when TCB filed its foreclosure proceeding, the county court at law did not have exclusive jurisdiction over matters incident to Shwery's estate.

### B. Closing of the Independent Administration

An independent executor may formally close an independent administration by filing a final account verified by affidavit. TEX. PROB.CODE ANN. § 151 (Vernon Supp. 1999); *Estate of McGarr,* 10 S.W.3d 373, 376 (Tex.App.—Corpus Christi 1999, no pet.). Section 151 of the probate code provides that:

When all of the debts known to exist against the estate have been paid, or when they have been paid so far as the assets in the hands of the independent executor will permit, when there is no pending litigation, and when the independent executor has distributed to the

persons entitled thereto all assets of the estate, if any, remaining after payment of debts, the independent executor may file with the court:

> (1) a closing report verified by affidavit that shows:
>
> (i) The property of the estate which came into the hands of the independent executor;
>
> (ii) The debts that have been paid;
>
> (iii) The debts, if any, still owing by the estate;
>
> (iv) The property of the estate, if any, remaining on hand after payment of debts; and
>
> (v) The names and residences of the persons to whom the property of the estate, if any, remaining on hand after payment of debts has been distributed; and
>
> (2) signed receipts or other proof of delivery of property to the distributees named in the closing report if the closing report reflects that there was property remaining on hand after payment of debts.

TEX. PROB.CODE ANN. § 151(a) (Vernon Supp.2000).

The filing of such an affidavit and proof of its delivery terminates the independent administration and the power and authority of the independent executor. *Id.* at § 151(b). At that point, persons dealing with properties of the estate or claims against the estate shall deal directly with the distributees of the estate. *Id.* The affidavit closing the independent administration gives the persons described in the will as entitled to receive particular assets the power to enforce their right to payment or transfer by suit. *Id.* at § 151(c); *Hanau,* 800 S.W.2d at 373. It does not, however, relieve the executor of liability for any mismanagement of the estate or from liability for any false statements in the affidavit. TEX. PROB.CODE ANN. § 151(c); *Hanau,* 800 S.W.2d at 373.

An independent administration also can be closed without filing an affidavit. Even in the absence of such an affidavit, an independent administration is considered closed when debts have been paid so far as the assets will permit and all property has been distributed. TEX. PROB.CODE ANN. § 151; *Hanau,* 806 S.W.2d at 903. This court has explained:

> An independent administration of an estate is considered closed when the debts have been paid and the property has been distributed and there is no more need for administration. The filing of a verified final account with the probate court pursuant to section 151 merely formally closes an independent administration.

*Hanau,* 806 S.W.2d at 903; *see also McGarr,* 10 S.W.3d at 376.

■ This Court has noted that we must look beyond the title of the final accounting to its contents to determine if the document is in fact a Section 151 affidavit. *Hanau,* 806 S.W.2d at 903. "If the instrument before the court is filed as the final accounting but is in reality only a presentation of the status of the estate and if it is apparent from the instrument that the estate is not ready to be closed, then, to close the estate would ignore the purpose of the statute." *Id.; accord Estate of Canales,* 837 S.W.2d 662, 669 (Tex.App.—San Antonio 1992, no writ). Still, where, as here, the affidavit generally comports with the requirements of section 151, the Estate appears to need no further administration, the probate court has both approved the affidavit and allowed resignation of the administrators without appointing successors, the verified account is sufficient to close the administration. Even the probate court has no power to "disapprove" a final account.[4]

---

4. The supreme court has explained that:
> [T]he probate code in no manner provides for the approval or disapproval of the substance of a 'Final Accounting' by an independent executor.... Section 151 is purely administrative in nature, providing simply a method whereby the closing of an independent administration can be made a

In this case, the application for approval of the final account and resignation and the final account and exhibit, along with the court's order approving same, shows that section 151's requirements were met. The final account and exhibit was sworn to by the administrators, as required by section 151. *See* TEX. PROB.CODE ANN. § 151(a)(1) (Vernon Supp.2000). Also, the exhibit listed the debts still owing by the Estate and the property of the Estate remaining on hand after payment of debts as required. *See id.* at § 151(a)(1)(iii), (iv).

Section 151 also requires that a closing affidavit show (1) the property of the estate which came into the hands of the independent executor, (2) the debts that have been paid, (3) the names and residences of the distributees of the property remaining after payment of debts, and (4) proof of delivery of the property. While the final account and exhibit did not contain this specific information, the court's order approving the final account stated that notice and citation had been given in the manner and for the length of time required by law and that the final account and exhibit complied with the law in every respect. The court's order also directed that the property be distributed to the persons entitled thereto. Upon entry of that order, each person entitled to distribution had the right to demand such distribution.

Also, it appears from the documents filed by the administrators that there was no need for further administration of the Estate. As we have noted, an independent administration of an estate is considered closed when the debts have been paid, the property has been distributed and there is no more need for administration, regardless of whether a section 151 closing affidavit has been filed. *McGarr*, 10 S.W.3d at

376; *Hanau*, 806 S.W.2d at 903. The Exhibit listed all the assets left on hand which totaled $784,705.94. The only debt of the Estate listed on the Exhibit was the remaining estate tax owed, which was to be paid in annual installments.[5] No installment payment was due at the time the final account was filed.

We hold that the Estate of Arthur J. Shwery was closed, at the latest, on the day the final account and resignation of the co-administrators was approved by the county court at law. Accordingly, the county court at law lost jurisdiction over matters incident to the estate on March 14, 1988. The district court had authority over the later foreclosure proceeding because the county court no longer had exclusive jurisdiction. At a minimum, we hold that the Estate did not conclusively establish that the Estate remained pending in the county court at law at the time of the foreclosure action.

### C. Personal Jurisdiction over the Temporary Administrator

█ The Estate argues that the district court never acquired in personam jurisdiction over the temporary administrator who was appointed after the Estate was closed. Because we have held that the Estate was closed at the time the foreclosure suit was filed, that question is moot.

TCB properly named and served all devisees of the Estate in the foreclosure proceeding, as required by section 151(b). *See* TEX. PROB.CODE ANN. 151(b) (actions after closing of an estate are to be taken directly against the distributees). Thus, personal jurisdiction over the temporary administrator was not required in order to exercise jurisdiction over the property be-

---

matter of record. It appears, therefore, that Section 151 cannot be construed as specifically providing the probate court with the power to look to the substance of the accounting in an effort to determine whether it is accurate or whether the executor has properly administered the estate.

*Burke v. Satterfield*, 525 S.W.2d 950, 953 (Tex. 1975).

**5.** The estate tax owed at that time, including interest, was $241,561.44.

cause the distributees of the property were properly before the court.

Likewise, we disagree with the Estate's argument that the Estate could not have been closed when the foreclosure proceeding was filed because a temporary administrator had been appointed and was serving as such. The temporary administrator, Robert Rex Williams, was appointed shortly before the foreclosure suit was filed in response to an application filed by TCB. His appointment expired after 180 days, on February 13, 1990. He stated in his sworn final account, filed the day after his term expired, that he accepted service of TCB's foreclosure petition on February 8, 1990. He also stated that, in his capacity as temporary administrator, he had attempted to sell the property, but was unable to procure a sales contract. Importantly, he stated that no property of the Estate ever came into his possession, and, for that reason, he was not obligated to account for any Estate property in his final accounting.

TCB was required to set forth the reasons it sought appointment of a temporary administrator in its application. It stated that:

> [TCB] holds a promissory note ... executed by six of the beneficiaries of this Estate ... payable to the order of [TCB] ... secured by a Deed of Trust ... executed by all of the then-serving Independent Co–Administrators of this Estate. ...

Further, TCB stated in its application that:

> On information and belief, this Estate owes the Department of the Treasury, Internal Revenue Service, in excess of $175,000.00 for Federal estate taxes ... [and] this Estate has insufficient funds to satisfy the next annual installment due on that debt, which is due to be paid, unless earlier accelerated, on or before February 27, 1990.
>
> ... [TCB] believes that the only possible funds for the proper satisfaction of the two debts ... must emanate from

the sale of the subject property. In this connection and as the situation now exists, any potential purchaser of the subject property has no one in authority to contact regarding the subject property, no one with authority to negotiate a proposed sale, and no one with authority to bind effectively this Estate should any offered terms of sale be acceptable. ... [TCB] asserts that it is absolutely mandatory that a personal representative be appointed immediately and that such personal representative be given the right ... to receive, evaluate, and circulate for review among persons interested in this Estate any and all contracts tendered for the purchase of the subject property, and to schedule the same for a hearing before this Court.

We do not pass on the propriety of the county court at law's appointment of a temporary administrator in response to the Bank's application as that question is not before this court. However, the property had been distributed at the time TCB's application was filed. All indications are that at the time of the filing the foreclosure suit, the distributees, not the Estate, held title to the property that had been pledged in the deed of trust.

Moreover, TCB was not a creditor of the Estate so much as it was a creditor of the beneficiaries of the Estate. The promissory note was entered into by four beneficiaries of the Estate, for the purpose of carrying out a settlement of Estate matters. The administrators pledged the Estate property in the deed of trust pursuant to that agreement also. Neither the note nor the deed was an obligation of Shwery, nor were they directed by Shwery's Will. We hold that the trial court's appointment of a temporary administrator does not compromise the validity of the foreclosure proceeding which was brought in a proper court, naming the proper parties.

Accordingly, because we find that the trial court erred in granting summary judgment in favor of the Estate on its

counterclaim seeking declaratory judgment, we reverse the summary judgment and remand this cause to the trial court for further proceedings consistent with this opinion.