

# NUMBER 13-12-00416-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

BLUE WAVE CAPITAL, LLC,                                          Appellant,

v.

BROWNSVILLE REGIONAL HOSPITAL,  LLC
AND GALENO'S ENTERPRISES, LLC,                          Appellees.

### On appeal from the 445th District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Longoria**
**Memorandum Opinion by Justice Rodriguez**

Appellant Blue Wave Capital, LLC (Blue Wave) appeals from a summary judgment

granted in favor of appellees Brownsville Regional Hospital, LLC (the Hospital) and

Galeno's Enterprises, LLC (collectively, Galeno's).  By two issues, Blue Wave contends

that the trial court erred in (1) granting Galeno's motion for summary judgment; and (2) overruling Blue Wave's motion for reconsideration and request for leave to file an amended affidavit.   We affirm in part and reverse and remand in part.

## I. BACKGROUND

On October 12, 2006, M.H. 7 Ranch Properties, LLC and M.H. 7 Properties, LLC (collectively, M.H. 7) entered into an agreement with Galeno's to purchase forty-one acres of real property that Galeno's owned in Brownsville, Texas.   The earnest money agreement was extended many times during the following seven months.   On May 16, 2007, Blue Wave and M.H. 7 entered into a brokerage agreement, providing that Blue Wave would procure a loan commitment for M.H. 7 to purchase Galeno's property.   The agreement also provided that M.H. 7 would pay a commission to Blue Wave upon delivery of the loan commitment.   Blue Wave apparently provided that commitment; however, Galeno's and M.H.7 were unable to agree on the terms of this financing, which involved Galeno's taking a second lien on the property.   Instead, on July 20, 2007, Galeno's and M.H. 7 amended their agreement to provide for 100% owner financing, and they closed on the property that month.   On December 26, 2007, seeking to secure unpaid commission against M.H. 7, Blue Wave filed a broker's lien against the property in the deed records of Cameron County, Texas.

In January 2008, M.H. 7 became delinquent in its payments, and Galeno's posted the property for foreclosure.   But because M.H. 7 filed for bankruptcy, the foreclosure was stayed until M.H. 7 filed an acceptable Chapter 11 plan of reorganization approximately one year later.   The bankruptcy court lifted the stay and allowed Galeno's to foreclose on the property and take it back.

Two months after the foreclosure of the forty-one acre tract, Blue Wave sued Galeno's for breach of contract and for tortious interference with an existing contract—specifically, the brokerage agreement. Galeno's filed general denials, specific denials, and special exceptions. It also asserted the affirmative defense of privilege, claiming that "the defendants['] actions were privileged . . . because the [d]efendants['] right in the subject matter of the property was superior to that of the Plaintiff or any other third party." In addition, Galeno's filed a counterclaim, seeking statutory damages and attorney's fees against Blue Wave for filing a fraudulent lien on the property. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 12.002 (West Supp. 2011), 37.009 (West 2008).

Blue Wave also sued M.H. 7 for breach of contract, and Galeno's cross-claimed against M.H. 7 and Eduardo Huerta, M.H. 7's managing partner, for breach of contract, fraud, and misrepresentation. Blue Wave's claims against M.H. 7 were later resolved by an agreed judgment, and Galeno's non-suited its claims against M.H.7 and Huerta. Those matters are not before us in this appeal.

On February 2, 2012, approximately three years after suit was filed, Galeno's filed a no-evidence and traditional motion for summary judgment. In its no-evidence motion, Galeno's argued that Blue Wave brought forth no evidence of Galeno's willful and intentional tortious interference with any existing contract.[1] Through its traditional motion, Galeno's asserted the following: (1) regarding Blue Wave's tortious interference claim, the summary judgment evidence conclusively established its affirmative defense of privilege; and (2) relevant to its counterclaim, the summary judgment evidence

---

[1] Galeno's did not challenge Blue Wave's breach of contract claim.

3

conclusively established that Blue Wave filed a fraudulent lien against the property to cause financial injury. In support of its motion, Galeno's filed, among other things, the various agreements discussed above and excerpts of the deposition testimony of Ramon Gerardo "Jerry" Rios, managing member and authorized agent for Blue Wave.

On February 28, 2012, Blue Wave filed the following response to Galeno's tortious-interference-with-a-contract challenge and Galeno's claimed affirmative defense of privilege:

> While [Galeno's] assertion that it has a privilege as to its real estate sales contract with MH7/Huerta is generally true, [Blue Wave's] claim against defendants MH7 and [the Hospital] are [sic] not about interference with the real estate contract. [Blue Wave] has two written, enforceable contracts with defendant MH7 that obligate MH7 to pay [Blue Wave] a commission for obtaining a loan commitment for MH7. The two contracts are substantially similar except for the loan amounts anticipated under the contracts. . . . [Blue Wave's] assertion is that [Galeno's] knew or should have known about the contract between [Blue Wave] and MH7 because [Blue Wave's] representative, Jerry Rios, specifically discussed the financing terms and the existence of a contract for financing between [Blue Wave] as a broker and MH7 as the client to representative for [Galeno's]. In addition, MH7 and [Galeno's] amended their existing real estate purchase contract in order to comply with the terms of financing set forth by the lender that provided the loan commitment for [Blue Wave] under the contract between [Blue Wave] and MH7. By simply inducing MH7 to not use the financing provided by [Blue Wave] via its loan commitment, [Galeno's] was instructing MH7 to breach its contract with [Blue Wave], thus interfering with [Blue Wave's] contract with MH7. *John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.,* 17 S.W.3d 730. Further [Galeno's] induced MH7 by intimidation, forcing MH7 to act under duress. In a tortious interference with contract suit, if a plaintiff pleads and proves methods of interference that are tortious in themselves, then the issue of privilege or justification never arises. *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.,* 29 S.W.3d 74. (Tex. 2000). *See* Exhibit "A", Affidavit of Jerry Rios.[2]

---

[2] Rios's affidavit set out the following in support of Blue Wave's claim of tortious interference with an existing contract:

> 2. I personally arranged for financing through Blue Wave Capital, LLC for M.H. 7's acquisition of the subject property, or "Tract 1" which was owned

4

In response to Galeno's traditional summary-judgment argument on its counterclaim for filing a fraudulent lien, Blue Wave agreed that it was not a broker but claimed that it hired a lawyer to represent it and to file the notice of lien. It also asserted that Galeno's did not have standing because M.H. 7 was the property owner of record, not Galeno's, when the lien was filed. Blue Wave further claimed that the counterclaim became moot when the lien was "cut off" by Galeno's foreclosure on M.H. 7's interest in the property. Blue Wave offered the following portion of Rios's affidavit to support this argument:

> In regards to the fraudulent lien claim set forth as a counterclaim by defendants Galeno[']s and [the Hospital], I filed the notice of lien through my

---

> by defendants Galeno[']s and [the Hospital]. As part of the financing terms, the sellers were asked to take a second lien position and allow for seller financing as a portion of the sales price. *The sellers agreed to this* and we subsequently had a conference call between the representatives of all of the parties of this lawsuit whereby everything was explained in detail by me to all of the parties. The representative for Galenos and [the Hospital] was Dr. Villalobos and possibly one other doctor. I don't remember if there was anyone else present for those defendants. Galenos' and [the Hospital's] primary concern was the security of the financing as this transaction had been on-going with false promises in the recent past by other lenders. I assured the representatives of Galenos and [the Hospital], and all parties, that I 1) had a source and a back up source for financing on this transaction as well as the transaction for the purchase of the adjacent tract of land, and 2) that I had a contract with MH7 for the loan commitment [and] would not have entered into such a contract if I did not think that I could obtain the financing that MH7 needed. I also discussed the general terms of the financing for the second (adjacent) tract of land and discussed how MH7 would obtain cash at closing to help fund the purchase of the second (adjacent) tract of land.
>
> 3. The closing documents were prepared by the title company and the loan was ready to fund when defendants Galenos and [the Hospital] decided that they would not close the transaction. I did not know at the time, but *I found out later, during MH7's bankruptcy proceedings that Galenos and [the Hospital] forced MH7 to take their seller financed deal and specifically told MH7 not to take Blue Wave Capital's or "Jerry's deal."*

(Italics added.) Galeno's objected to the italicized portions of Rios's affidavit on the basis that each statement either lacked foundation or was hearsay or both, and the trial court granted Galeno's objections.

attorney at the time, against defendant MH7 while MH7 owned the subject property. I was not licensed as a lawyer until May 2, 2008. It is my belief that the broker's lien filed was terminated when Galenos and [the Hospital] foreclosed on MH7, wiping out all inferior liens.

On March 20, 2012, after considering the motion, reviewing the evidence, and hearing arguments, the trial court entered an order generally granting Galeno's motion for no evidence and traditional summary judgment. The judgment disposed of Blue Wave's tortious interference claim against Galeno's and Galeno's fraudulent lien claim against Blue Wave.

On March 29, 2012, the trial court entered a second judgment again granting Galeno's summary judgment against Blue Wave. In its March 29 judgment, the trial court found that Blue Wave should take nothing by its suit against Galeno's. The trial court also found that the broker's lien filed by Blue Wave in the deed records was null and void and that the lien filed by Blue Wave against real property in which Galeno's held an interest was in violation of section 12.002 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002. It awarded $10,000.00 in statutory damages and $4,525.00 in attorney's fees against Blue Wave and in favor of Galeno's. The judgment set out that "[a]ll other relief not expressly granted is denied."

On March 30, 2012, Blue Wave filed a motion for reconsideration, which we construe as a motion for new trial. In support of its motion, Blue Wave attached, among other things, M.H. 7's responses to Blue Wave's request for admissions. Blue Wave claimed that M.H. 7 filed its responses after the summary judgment hearing. It also asserted that this summary judgment evidence was sufficient to raise a fact issue as to Galeno's intentional interference with the contract between Blue Wave and M.H. 7,

6

specifically whether Galeno's intentionally interfered in an existing contract between Blue Wave and MH7 by entering into the Commercial Contract Financing Addendum on July 29, 2007. Blue Wave's motion for reconsideration requested that the trial court vacate the summary judgment and grant it a new trial. The trial court did not grant Blue Wave's motion for reconsideration, and it was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c).

Blue Wave also requested the trial court's leave to file Rios's amended affidavit, which added the following in support of its tortious interference claim: (1) "The sellers [Galeno's] agreed to take a second lien position and allow for seller financing on a portion of the sales price as evidenced by their signatures (both are by Dr. Jose Villalobos) on the Commercial Contract Financing Addendum that is incorporated into Plaintiff's Second Amended Petition"; and (2) "I did not know at the time, but I spoke to Eduardo Huerta, member of MH 7. [sic] at one of MH7's bankruptcy hearings and was told that he was forced to take the 100% seller financed deal and that he acted out of duress in closing the 100% seller financed transaction." No ruling on Blue Wave's motion for leave to file Rios's amended affidavit appears in the record.

The trial court disposed of all remaining claims and parties either by an agreed judgment on April 16, 2012 or by a non-suit on May 16, 2012. Blue Wave filed its notice of appeal.[3]

## II. APPELLATE JURISDICTION

As a preliminary matter, we address Galeno's argument that Blue Wave did not

---

[3] Because the trial court's judgment denied all relief not expressly granted, it denied Blue Wave's breach of contract claim. Blue Wave does not challenge that ruling on appeal.

properly invoke this Court's jurisdiction because it failed to timely file its notice of appeal.

A motion for new trial "shall be filed prior to or within thirty days after the judgment or other order complained of is signed." TEX. R. CIV. P. 329b(a). This "prior to" language is supplemented and clarified by rule 306c, which provides that "[n]o motion for new trial . . . shall be held ineffective because prematurely filed," and a motion for new trial filed before judgment "shall be deemed to have been filed on the date of but subsequent to the time of signing of the judgment the motion assails . . . ." *Id.* at R. 306c. An appellate court may treat actions taken before an appealable order is signed as relating to an appeal of that order and give them effect as if they had been taken after the order was signed. TEX. R. APP. P. 27.2. So a premature motion for new trial will extend the appellate timetable. *S. Tex. GMAC Real Estate v. Cohyco, Inc.*, 124 S.W.3d 321, 325 (Tex. App.—Corpus Christi 2003, no pet.); *see Nuchia v. Woodruff*, 956 S.W.2d 612, 614–15 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (op. on reh'g) (holding that a motion for new trial extended the appellate timetable even though directed at an interlocutory judgment that did not become final until the court dismissed the remaining counterclaims five months later).

Galeno's contends that Blue Wave's motion for new trial filed on March 30, 2012, assailed neither the April 16, 2012 agreed judgment nor the May 16, 2012 non-suit, and so it did not trigger the extended ninety-day deadline to file its notice of appeal. According to Galeno's, Blue Wave was required to file a notice of appeal by June 15, 2012, within thirty days of the May 16, 2012 non-suit that disposed of all parties and all issues. *See* TEX. R. APP. P. 26.1. Galeno's argues that because Blue Wave untimely filed its notice of appeal on June 20, 2012, it failed to properly invoke this Court's

jurisdiction, and this appeal should be dismissed. *See id*.; *see also id.* at R. 25.1(b). We disagree.

Blue Wave filed its motion for reconsideration or motion for new trial on March 30, 2012, specifically challenging the March 20 summary judgment order. It filed the motion after the March 29, 2012 judgment, which again granted Galeno's motion for partial summary judgment and, this time, denied all other relief not expressly granted. It is apparent from the record that the trial court did not sever the claims filed by Blue Wave and Galeno's against each other from the remaining claims and other parties, so the March judgments were interlocutory, and the motion was premature. Blue Wave's motion for new trial also applied to the April 16, 2012 agreed judgment, which disposed of Blue Wave's claims against M.H. 7, and the May 16, 2012 order, which non-suited Galeno's cross-claims against M.H. 7 and which also made the previous March 20 and 29 interlocutory summary judgments final.

We conclude that Blue Wave's challenge to the trial court's summary judgment, though raised in its prematurely filed March 30, 2012 motion for new trial, certainly assailed the judgment that was eventually signed on May 16, 2012; a judgment that finally resolved all claims filed by Blue Wave and Galeno's against each other. *See* TEX. R. CIV. P. 306c. Blue Wave's motion for new trial triggered the extended ninety-day deadline to file its notice of appeal even though directed at an interlocutory judgment that did not become final until the trial court disposed of the remaining claims and parties months later. *See S. Tex. GMAC Real Estate*, 124 S.W.3d at 325; *Nuchia*, 956 S.W.2d at 614–15; *see also* TEX. R. APP. P. 26.1. So we conclude that Blue Wave filed its notice of appeal timely on June 20, 2012, invoking this Court's jurisdiction.

9

By its first issue, Blue Wave challenges the trial court's granting of Galeno's motion for summary judgment. Blue Wave contends that: (1) the trial court erred in disregarding Jerry Rios's affidavit and refusing to provide Blue Wave with an opportunity to argue for or amend that affidavit; (2) if the trial court overruled Galeno's objections to Rios's affidavit, it erred in granting Galeno's summary judgment because the evidence raised a genuine issue of material fact related to Galeno's assertions that (a) there was no evidence of willful and intentional tortious interference and (b) the summary judgment evidence conclusively established that Blue Wave filed a fraudulent lien against the forty-one acre tract; and (3) alternately, if the trial court sustained Galeno's objections to portions of Blue Wave's response affidavit, it erred in granting Galeno's summary judgment on its fraudulent lien counterclaim because the remaining portions of the affidavit created a fact issue and, therefore, Galeno's did not conclusively establish that Blue Wave filed a fraudulent lien against the forty-one acre tract. In sum, through these contentions and its supporting appellate argument and authority, Blue Wave addresses why the trial court erred in granting a no-evidence summary judgment on its tortious interference claim and a traditional summary judgment on Galeno's fraudulent lien claim.

## A. Standard of Review

We review de novo the trial court's granting of a summary judgment. *Valence Op. Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A no-evidence summary-judgment motion should be granted if there is no evidence of at least one essential element of the plaintiff's claim. *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). "To obtain a traditional summary judgment, a defendant must either negate at least one

element of the plaintiff's theory of recovery or plead and conclusively establish each element of an affirmative defense." *Affordable Motor Co. v. LNA, LLC,* 351 S.W.3d 515, 519 (Tex. App.—Dallas 2011, pet. denied) (citing TEX. R. CIV. P. 166a(c); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). When a defendant moves for summary judgment on its counterclaim, the defendant's burden is the same as for a plaintiff moving for summary judgment on its cause of action; "it has the burden to conclusively establish all elements of its claim as a matter of law." *Id.* (citing TEX. R. CIV. P. 166a(c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986) (per curiam)); *see Tex. Commerce Bank v. Correa*, 28 S.W.3d 723, 726 (Tex. App.—Corpus Christi 2000, pet. denied). "A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence." *Affordable Motor Co.,* 351 S.W.3d at 519 (citing *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982)). Once the movant produces sufficient evidence to establish the right to summary judgment, the non-movant must present evidence sufficient to raise a fact issue. *Centeq Realty, Inc.*, 899 S.W.2d at 197. When deciding whether a disputed, material fact issue precludes summary judgment, we take as true evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve any doubts favor of the non-movant. *City of Keller v. Wilson*, 168 S.W.3d 802, 825 & 827 (Tex. 2005); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

When an order granting summary judgment does not specify the grounds on which summary judgment was granted, we may uphold the summary judgment on any ground presented in the motion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157

(Tex. 2004). If an appellant does not challenge each possible ground on which summary judgment could have been granted, we must uphold the summary judgment on the unchallenged ground. *Bever Props., L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 888 (Tex. App.—Dallas 2011, no pet.); *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied); *see Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970).

## B. Blue Wave's Tortious Interference With an Existing Contract Claim

In its no-evidence motion, Galeno's argued that Blue Wave brought forth no evidence of Galeno's willful and intentional tortious interference with any existing contract. However, in its traditional motion for summary judgment, Galeno's argued that it was entitled to summary judgment on this claim because "[t]he summary judgment evidence conclusively demonstrates that . . . Galeno['s]/[the Hospital] could not have tortiously interfere[d] with any contract between Blue Wave and MH7 because it had a financially superior right to protect its own legitimate business interests in modifying its sales agreement with MH7/Huerta." Galeno's developed, with supporting authority and argument, its argument that it had an absolute privilege to modify its contract with M.H. 7. It argued that the summary judgment evidence conclusively established that Galeno's,

> had a pre-existing sales contract with MH7 which had been in place for six months prior to Blue Wave entering into any agreement with MH7. [Galeno's] had every legal right to modify its agreement with MH7/Huerta from a total cash price at closing, to partial financing and then to 100% financing as it ultimately did in this instance.

In support of its privilege affirmative defense argument, Galeno's attached as exhibits: (1) the October 12, 2006 real estate sales agreement between the buyer Huerta, for M.H. 7, and the seller Galeno's; (2) the July 20, 2007 commercial contract addendum

agreement between the seller Galeno's and the buyer Huerta that provided Galeno's would finance the purchase price of the property; and (3) the affidavit of Dagoberto Martinez, M.D. that stated the following:

> On July 2007 in discussions regarding the pending sale of 41 acres from [Galeno's] to Eduardo Huerta, [Galeno's] rejected a proposal to sell the property and take a second lien[,] which would not have been in the best interests of the company. Subsequently, an agreement was reached to sell the property to Huerta and MH7 and finance all of the purchase price.

The trial court's judgment did not identify the ground upon which it was based. Instead, it referenced Galeno's no evidence and traditional motions and stated that it was "of the opinion that the motion be granted and that judgment be entered in favor of [Galeno's] . . . ." So the trial court's general grant of summary judgment could have been based on Galeno's affirmative defense of privilege presented in its traditional motion for summary judgment, and we could uphold it on that basis. *See Joe*, 145 S.W.3d at 157.

However, on appeal, Blue Wave does not provide any argument negating Galeno's affirmative defense of privilege as a ground for summary judgment. Blue Wave argues only that it brought "forth more than a scintilla of probative evidence to raise a genuine issue of material fact related to [Galeno's] assertion that . . . there was no evidence of willful and intentional tortious interference." This is a challenge to grounds raised in Galeno's no-evidence motion. This is not a challenge to grounds raised by Galeno's in its traditional motion—specifically, Galeno's assertion that it established a privilege. So because Blue Wave has not challenged each of the possible grounds for summary judgment on appeal, we must affirm the summary judgment in favor of Galeno's on Blue Wave's tortious interference with an existing claim. *See Bever Props.*, 355 S.W.3d at 888; *Jarvis*, 298 S.W.3d at 313. We overrule Blue Wave's first issue to the

13

extent it challenges the trial court's summary judgment granted in favor of Galeno's on its tortious interference of a contract claim.

**C.      Galeno's Fraudulent Lien Counterclaim**

By its first issue, Blue Wave also contends that the trial court should not have granted Galeno's traditional motion for summary judgment against Blue Wave on its fraudulent lien counterclaim because the summary judgment evidence was uncontroverted and set forth facts that were not challenged by Galeno's.   Blue Wave specifically refers this court to Rios's statement in his affidavit that Blue Wave filed the lien during a time when Galeno's was not the owner of the property.   Blue Wave argues that, based on this evidence, Galeno's had no standing to sue for a fraudulent lien.   Yet section 12.003(a)(8) of the Texas Civil Practices and Remedies Code provides that a person who owns an interest in the real property may bring an action to recover damages in the case of a fraudulent lien against the real property.   TEX. CIV. PRAC. & REM. CODE ANN. § 12.003(a)(8) (West Supp. 2011).   It is undisputed that at the time the purported fraudulent lien was filed, Galeno's held an interest in the property at issue in this case in the form of a deed of trust.   So we conclude that Galeno's, as holder of a deed of trust on the property, had standing to sue Blue Wave for a fraudulently filed lien.   *See id.*

Nevertheless, in a traditional motion for summary judgment, such as the one Galeno's filed on its counterclaim, the movant has the burden to conclusively establish all elements of its fraudulent lien claim as a matter of law.   *See Correa*, 28 S.W.3d at 726. In order to establish its claim for the filing of a fraudulent lien affidavit against real property in the deed records of Cameron County, Texas, Galeno's had to conclusively prove as a matter of law that Blue Wave (1) made, presented, or used a document with knowledge

that it was a fraudulent claim against real property, (2) intended the document be given legal effect, and (3) intended to cause financial injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a); *see also Brewer v. Green Lizard Holdings, L.L.C.*, No. 02-12-00421-CV, 2013 Tex. App. LEXIS 8919, at *9 (Tex. App.—Fort Worth July 18, 2013, no pet.) (mem. op.).

On appeal, Galeno's asserts that it is undisputed that neither Blue Wave nor its owner, Jerry Rios, was a licensed broker and, therefore, not entitled to file a real estate broker's lien for Blue Wave. *See* TEX. OCC. CODE ANN. § 1101.002(1) (West Supp. 2011) (defining "broker"); TEX. PROP. CODE ANN. § 62.021 (West 2007) (identifying persons entitled to a lien). Galeno's also claims that "Rio's [sic] deposition testimony[, excerpts of which Galeno's filed in support of its traditional motion,] established that although [Rios] was aware that he had no right to file such a lien, he took no steps to remove that document that created a cloud on [Galeno's] title to the property as a lien holder in 2007 and 2008, or after Galeno's foreclosed in 2009."

In the excerpts of Rios's deposition that Galeno's attached as support for its motion, Rios conceded that he was not a broker. However, the excerpts also included testimony that Rios "had an attorney" file the broker's lien. Rios explained that his attorney advised him that he "believed [Blue Wave] could file a broker's lien against this property" and that Blue Wave "needed to file this broker's lien" because M.H. 7 had recently filed bankruptcy. Through his deposition testimony, Rios explained that he had done no investigation to determine whether he was entitled to file the lien on the property because he "figured it was a moot point since it had been knocked out by the bankruptcy court"; he believed that because the bankruptcy court did not allow Blue Wave's claim, it

canceled everything—"the bankruptcy court actually wiped it out." Taking as true evidence favorable to Blue Wave, indulging every reasonable inference in its favor, and resolving any doubts in favor of Blue Wave, *see City of Keller*, 168 S.W.3d at 825 & 827; *Nixon*, 690 S.W.2d at 548–49, we cannot conclude that Galeno's produced sufficient evidence to establish a right to its fraudulent lien claim, specifically to establish the first two elements of its fraudulent lien claim. *See Centeq Realty, Inc.*, 899 S.W.2d at 197; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a); *Brewer*, 2013 Tex. App. LEXIS 8919, at *9.

Moreover, Blue Wave also filed Rios's affidavit in support of its response to Galeno's motion for summary judgment. His affidavit provided, in relevant part, the following:

> In regards to the fraudulent lien claim set forth as a counterclaim by defendants Galenos and [the Hospital], I filed the notice of lien through my attorney at the time, against defendant MH7 while MH7 owned the subject property. I was not licensed as a lawyer until May 2, 2008. It is my belief that the broker's lien filed was terminated when Galenos and [the Hospital] foreclosed on MH7, wiping out all inferior liens.

Based on this evidence, even were we to conclude that Galeno's produced sufficient evidence to establish its right to summary judgment , we would further conclude that Blue Wave raised a fact issue, *see Centeq Realty, Inc.*, 899 S.W.2d at 197, regarding whether it filed the broker's lien affidavit with knowledge that it was a fraudulent claim against real property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a); *see also Brewer*, 2013 Tex. App. LEXIS 8919, at *9.

Finally, as to the third element of its claim, Galeno's also argues that it is "undisputed that the filing of that lien was intended to cause financial injury or impairment

16

to the property now owned by Galeno's." *See* Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a); *see also Brewer*, 2013 Tex. App. LEXIS 8919, at *9. The record citations provided by Galeno's offer no support for this argument. Instead, the referenced testimony sets out that Rios agreed that if the lien was still pending it creates a cloud on the title and that he "would be happy to release it because it was definitely not against Galeno's. It was against M.H. 7." And the remainder of the testimony on the referenced pages relates only to Blue Wave's tortious interference with a contract claim against Galeno's and not to Galeno's fraudulent lien counterclaim against Blue Wave. We cannot conclude that through this testimony, Galeno's conclusively established that Blue Wave intended to cause financial injury. *See* Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a); *see also Brewer*, 2013 Tex. App. LEXIS 8919, at *9. Ordinary minds could differ as to the conclusion to be drawn from the evidence on this injury element. *Affordable Motor Co.,* 351 S.W.3d at 519 (citing *Triton Oil & Gas Corp.*, 644 S.W.2d at 446).

Based on our de novo review of the trial court's summary judgment, we conclude that Galeno's did not establish its right to summary judgment on its fraudulent lien claim. We sustain Blue Wave's first issue to the extent it challenges the trial court's summary judgment granted in favor of Galeno's on Galeno's fraudulent lien claim.

### IV. MOTION FOR RECONSIDERATION AND REQUEST FOR LEAVE TO FILE RIOS'S AMENDED AFFIDAVIT

By its second issue, Blue Wave contends that the trial court erred in overruling its motion for reconsideration and request for leave to file Rios's amended affidavit. It asserts that the newly discovered evidence in the form of M.H. 7's responses to requests

17

for admissions helped further establish the elements of its claim against Galeno's for tortious interference with an existing contract. Because we have concluded that the trial court's summary judgment on this claim could have been based on Galeno's asserted defense of privilege and Blue Wave did not address that basis on appeal, this issue regarding evidentiary support for the elements of this claim is not dispositive, and we do not need to address it. *See* TEX. R. APP. P. 47.1.

## V. CONCLUSION

We affirm the trial court's judgment in part to the extent it grants summary judgment in favor of Galeno's on Blue Wave's tortious interference with an existing contract claim, and we reverse the judgment in part to the extent it grants summary judgment in favor of Galeno's on its fraudulent lien claim and remand for proceedings consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 5th
day of September, 2013.

18